This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                                                    **NO. 30,045**

**SAMUEL GUERRERO,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Office of Craig C. Kling
Craig C. Kling
San Diego, CA

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Defendant Sammy Guerrero appeals his conviction for aggravated battery in violation of NMSA 1978, Section 30-3-5(A) and (C) (1969). Defendant argues that the district court erred when it denied his tendered jury instruction on defense of another and when it denied his motion for a new trial. We conclude that the district court did not err in denying Defendant's tendered instruction or Defendant's motion for a new trial. We affirm.

**BACKGROUND**

At trial, the parties presented two different theories of what might have happened in the early morning hours of February 7, 2008. The State's theory was that Defendant's brother, Fernando Rodriguez, got into a fight with Elias Calderon at Defendant's home at 712 Calhoun, and after that fight, Defendant and Fernando drove to 601 Thornton and used a bat to retaliate against Elias. Defendant's theory, on the other hand, was that there was a single fight involving the use of a bat to defend Fernando at 712 Calhoun. We outline the evidence presented at trial that supports each of the competing theories.

The State's evidence at trial included the following. On February 6, 2009, friends and family gathered at Janette Chavarria's home at 601 Thornton in Clovis, New Mexico. Sometime after midnight, two people were outside Janette's home smoking, and they noticed two other people breaking into a black jeep belonging to

2

Raquel Nicolas. The two smokers alerted those inside, and Janette and Racquel ran outside in time to see the burglars getting out of the jeep and running away with a purse. The two smokers, Racquel, and Elias left 601 Thornton in pursuit of the thieves.

Elias followed the sound of footsteps until he saw Fernando outside of the house at 712 Calhoun, just a few blocks from 601 Thornton. Elias questioned Fernando about the purse, and he and Fernando began arguing and then began fighting. Elias and Fernando engaged in a fist fight at 712 Calhoun where Elias remembered being hit in the eye and nose but did not recall being hit with a bat.

Once the fight stopped, Elias rode back to 601 Thornton in a car. Shortly after Elias returned to 601 Thornton, Defendant and Fernando drove up in a white Ford Focus. Defendant and Fernando got out of the car and started beating Elias with a bat that they were trading back and forth. After the first hit with the bat, Elias passed out. When Elias was passed out and laying on the ground, Janette started throwing beer bottles at Defendant and Fernando, because they would not stop beating Elias. One of the bottles hit and shattered a window in the Ford Focus. When the beating stopped, Defendant and Fernando left in the Ford Focus.

Janette and her mother both testified that during the fight, several people were trying to call 911, and Janette's mother got through to an operator. Shortly after

3

connecting with the 911 operator, police officers arrived at 601 Thornton, and Elias was taken to the hospital by emergency medical personnel. Elias received twenty-four staples in his head for the injuries he sustained.

While responding to the incident at 601 Thornton, one officer received a tip from some passengers in a truck that passed by who stated that the men who had beaten Elias were at 712 Calhoun. Officers went to 712 Calhoun and spoke with Defendant and Fernando. The officers investigated both addresses to determine what happened. Defendant and Fernando were taken to the police station for further questioning, and Defendant admitted to using a bat to stop the battery of Fernando at their home at 712 Calhoun.

At trial, Defendant argued that there was a single fight involving the use of a bat to defend Fernando at 712 Calhoun. His theory was supported by his statements to the police and his witnesses' testimony at trial. Defendant told police that shortly after he returned home from work, he heard Fernando yelling for him outside. Defendant stated that he went outside his house at 712 Calhoun and saw Fernando being attacked by four men and being hit with rocks. Defendant told police officers that he used a bat to stop the attack.

While Defendant initially denied going to 601 Thornton, he later changed his story and told police officers that after the fight at 712 Calhoun, he and Fernando left

4

in their mother's white Ford Focus and drove to 601 Thornton. However, he stated that because there were so many people outside and because those people were throwing beer bottles at the car he and Fernando were in, he and Fernando just drove by.

Fernando similarly testified that after the fight at 712 Calhoun stopped, he and Defendant took their mother's white Ford Focus and drove by 601 Thornton. He testified that he had wanted to "talk to them" but was unable to because there were too many people outside the house at 601 Thornton throwing beer bottles and rocks at the Ford Focus. He also stated that one of the back windows of the car was broken out while they were driving by.

The State charged Defendant with aggravated battery, and Defendant went to trial on August 11 and 12, 2009. At trial, Defendant requested that the jury be instructed on the defense of another defense as provided in UJI 14-5182 NMRA. The district court denied his request. Defendant was convicted on the aggravated battery charge. After the verdict, defense counsel made an oral motion for a new trial because he contended that the jury could have misunderstood that it had to find that Defendant used the bat at 601 Thornton and not at the 712 Calhoun address. The district court denied the motion.

# DISCUSSION

## The District Court Did Not Err in Denying Defendant's Tendered Jury Instruction on Defense of Another

Defendant appeals the district court's denial of his tendered jury instruction on defense of another. He contends that he was entitled to the instruction, because it supported his theory of the case that he only used the bat to defend Fernando at 712 Calhoun and that he did not get out of the car at 601 Thornton. The denial of Defendant's tendered jury instruction on defense of another is a mixed question of law and fact. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. We review mixed questions of law and fact de novo. *Id.*

A jury instruction on defense of another is appropriate when the defendant has presented evidence sufficient to support every element of the instruction. *See id.* ¶ 50; *State v. Rudolfo*, 2008-NMSC-036, ¶ 27, 144 N.M. 305, 187 P.3d 170 (holding that the defendant must present sufficient evidence for each element of the self-defense instruction in order to give the instruction); *see also State v. Gallegos*, 2001-NMCA-021, ¶ 7, 130 N.M. 221, 22 P.3d 689 (holding that jury instructions for defense of another and self-defense are virtually identical for purpose of analysis). For evidence to be sufficient, "there need be only enough evidence to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted" in defending another person. *Rudolfo*, 2008-NMSC-036, ¶ 27. The elements of defense of another are:

6

1. There was an appearance of immediate danger of bodily harm to [another] as a result of [an unlawful act that would result in some bodily harm]; and

2. [D]efendant believed that [another] was in immediate danger of bodily harm from [the victim] and [Defendant's action was] to prevent the bodily harm; and

3. [D]efendant used an amount of force that [D]efendant believed was reasonable and necessary to prevent the bodily harm; and

. . . .

5. The apparent danger to [another] would have caused a reasonable person in the same circumstances to act as [D]efendant did.

UJI 14-5182.

In this case, we conclude that Defendant did not present sufficient evidence of the above elements for the defense of another instruction. As we have noted, evidence was presented of two separate altercations, the first at 712 Calhoun and the second at 601 Thornton. Defendant admitted to police officers that he used the bat to defend Fernando during the altercation at 712 Calhoun. However, as we discuss more fully below, the State and the charging officer agreed that Defendant could have been defending Fernando at 712 Calhoun, and for that reason, he was not charged for anything that occurred during that fight. Instead, Defendant was only charged with and prosecuted for his actions in the altercation occurring at 601 Thornton.

Turning to the incident at 601Thornton for which Defendant was charged, we conclude that none of the elements for a defense of another jury instruction are present

7

under either parties' theory of the case. Defendant's argument at trial and the evidence he presented was that he only drove by 601 Thornton and that no fight occurred at that location. Thus, under Defendant's theory, he is not entitled to the instruction because no altercation took place that would warrant such an instruction. Evidence in support of the State's theory of the case established that Defendant pursued Elias back to 601 Thornton and used a bat to beat Elias in retaliation for the fight at 712 Calhoun. Under the State's theory of the case, Defendant is not entitled to the instruction either. *See Rudolfo*, 2008-NMSC-036, ¶ 18 (explaining that even if the defendant had been in fear of death or imminent bodily harm, the fear could not have been present once the victims were fleeing by vehicle).

We conclude that the district court did not err in denying Defendant's tendered jury instruction on defense of another.

**The District Court Did Not Abuse Its Discretion in Denying Defendant's Motion for a New Trial**

Defendant contends that the district court abused its discretion when it denied his motion for a new trial because the jury could have misunderstood the law and facts of the case when the jury instructions did not specifically state that the State had to prove that Defendant used the bat at 601 Thornton. He contends that it was not clear from the jury instructions that Defendant could only be convicted if the jury found that he used the bat at 601 Thornton. Further, Defendant argues that because he had

8

admitted to the use of the bat at the fight that took place 712 Calhoun, the jury could have used that admission to find him guilty of the charged crime. We are not persuaded.

We review a district court's decision to deny a motion for a new trial for an abuse of discretion. *State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995) (internal quotation marks and citation omitted). "When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." *Moreland*, 2008-NMSC-031, ¶ 9 (internal quotation marks and citation omitted).

At trial, the jury was instructed on aggravated battery, based on UJI 14-322 NMRA and 14-323 NMRA. Defendant did not object to the instructions. As a result, the district court did not abuse its discretion in denying the motion for a new trial because Defendant "cannot be heard to complain, since he failed to object to the instruction[s] and thus, to alert the mind of the court to the claimed error." *State v. Weber*, 76 N.M. 636, 642, 417 P.2d 444, 448 (1966).

Defendant contends that it would have been useless to request that the 601 Thornton address be included in the aggravated battery instruction because the district

court had already denied his instruction for defense of another on the grounds that the use of a bat was not reasonable at either address. However, the issue of whether an instruction on defense of another was warranted is distinct from the issue of the need for an instruction on the location of the crime. One provides a justification for the infliction of great bodily harm, while the other merely specifies which of the two attacks formed the basis for the crime that was charged. *See Rudolfo*, 2008-NMSC-036, ¶ 20 (stating that self-defense is a justification for a homicide). Because the district court's ruling on the defense of another instruction was unrelated to the question of where the charged crime occurred, it would not have been useless for Defendant to object to the instruction given or to have tendered an instruction which included the address.

Furthermore, at several points during the trial, it was clarified that Defendant was being tried for the altercation that took place at 601 Thornton. The police officer who charged Defendant with the crime testified that he did not charge Defendant for anything that happened at 712 Calhoun because Defendant could have been acting in defense of another person during that fight, but he instead charged Defendant with aggravated battery for the events that occurred at 601 Thornton.

The State explained to the jury in both opening and closing arguments that the case against Defendant was based on what happened at 601 Thornton. In closing

arguments, defense counsel also stated that what happened at 712 Calhoun was not the basis for the crime that was charged against Defendant. Defense counsel further clarified that for purposes of the aggravated battery charge, it did not matter whether Defendant used a bat at 712 Calhoun; it only mattered whether the jury believed that the State met its burden of establishing that Defendant used a bat to beat Elias at 601 Thornton. Although these arguments were not evidence in the case, these statements were made to assist the jury in its understanding that it only needed to consider the evidence presented regarding the fight at 601 Thornton. *See* UJI 14-101 NMRA (explaining that the "statements made by the lawyers . . . can be of considerable assistance to [the jury] in understanding the evidence as it is presented at trial").

Thus, where Defendant failed to object to the instruction as given and where the district court could have reasonably concluded that the jury would not be confused that the crime was only for the altercation at 601 Thornton, it was not an abuse of discretion to deny the motion for a new trial.

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's conviction.

**IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**JAMES J. WECHSLER, Judge**