# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMSC-014

Filing Date: May 10, 2012

Docket No. 31,973

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

GRACIELA GUERRA,

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**DANIELS, Justice.**

**{1}** A jury found Defendant Graciela Guerra guilty of first-degree murder for the stabbing death of her daughter-in-law, Brenda Guerra, in an Alamogordo motel room. The district court sentenced Defendant to a mandatory term of life imprisonment, giving this Court exclusive jurisdiction to hear her direct appeal. *See* N.M. Const. art. VI, § 2 ("Appeals from a judgment of the district court imposing a sentence of death or life imprisonment shall be taken directly to the supreme court."); *accord* Rule 12-102(A)(1) NMRA.

1

**{2}** We address Defendant's arguments that the district court: (1) erred by denying Defendant's self-defense instruction; (2) abused its discretion when it excluded, for lack of notice under Rule 5-602(F) NMRA, expert testimony about Defendant's incapacity to form specific intent; (3) abused its discretion when it excluded expert testimony related to whether the victim's wounds would have been fatal if treated; (4) abused its discretion when it excluded letters Defendant wrote while in prison; (5) and abused its discretion when it denied Defendant's motion for a new trial. Defendant also makes a claim of cumulative error. We affirm her conviction.

## I. BACKGROUND

**{3}** Defendant's son Christian and Christian's wife, the victim, were going through a divorce at the time of the killing. Throughout the divorce proceeding, Christian and the victim vacillated about whether to reconcile. On May 13, 2008, Christian and the victim attended a divorce hearing in Alamogordo. Christian had expected the victim's attorney to withdraw from the case at that hearing to allow both parties to proceed in the divorce without representation, but the victim changed her mind about giving up her lawyer. The couple argued for much of the afternoon following the hearing.

**{4}** After the hearing, Christian dropped off the victim at her motel, went to his house, and told Defendant, who was living with Christian and the children, about what happened at the hearing. Later in the day, after Christian had dropped off the children at the victim's motel, he told Defendant that he and the victim had agreed to reconcile and that Defendant could either stay and help them with the children or move out. Defendant replied to Christian that she would "fix it for [him]." Christian indicated that he did not want Defendant talking to the victim; he wanted Defendant to stay home and "cool down." After this exchange, Christian drove to the victim's motel.

**{5}** Defendant followed Christian to the motel. Christian saw Defendant in her car behind him and called her cellular phone to tell her not to follow him. Christian eventually lost sight of Defendant's car and continued driving to the motel. After Christian entered the room and while he was seated on the bed, Defendant knocked on the door. The victim opened the door and asked, in Spanish, "what is *that* doing here?" A hair-pulling fight then broke out between the two women.

**{6}** Christian rose from the bed to break up the fight but stopped when he saw that Defendant was armed with a large knife and that the victim was falling to the floor, bleeding. Christian grabbed his older son, covered the boy's eyes, and ran to put the child in his car. When he returned to the room to get his younger son, the door was locked. Christian could hear Defendant saying "bad" things in Spanish and could hear the victim screaming "God, God, God!" Eventually Defendant, covered in blood and holding a knife, opened the door and told Christian "take [your] kids, [you're] free." Christian took his younger son, drove home with the children, and called 911.

2

**{7}** A motel guest saw Defendant enter the victim's room and saw Christian leave with the children about ten minutes later. The witness was able to see Defendant inside the room with blood on her hands and the victim lying on the floor. As the witness entered the room, Defendant was shouting obscenities and kicking the victim's body. Defendant told the witness not to call the police. The witness went to the motel office, asked an employee to call the police, and returned to his own room to call the police.

**{8}** When the police arrived, they found Defendant standing in the open doorway of the victim's room, covered in blood. The police took Defendant into custody. They found the victim lying on the floor and exhibiting no signs of life. While they investigated the scene, Defendant repeatedly said in Spanish, "I killed her!" On the way to the police station, Defendant made a number of additional volunteered admissions. She said that she told Christian she intended to kill the victim, but Christian did not believe her. She claimed that she and the victim "had some words," that she told Christian to take the children and leave, that a scuffle ensued, and that she stabbed the victim several times. She told the police that she was tired of the way the victim treated Christian and the children.

**{9}** In the motel room, investigators found two knives covered with blood, a kitchen knife with a bent four-inch blade and a butcher's knife with a bent seven-inch blade. DNA analyses confirmed that the blood came from the victim. In the kitchen of Christian's residence, where Defendant had been living, investigators found a knife block with one of the matching steak-knives missing.

**{10}** An autopsy of the victim revealed forty-one injuries, thirty-one of which were stab wounds. The knives found at the scene were consistent with these wounds. One of the stab wounds in the back of the victim's neck cut her jugular vein. The victim had four stab wounds in her right back, two of which punctured her right lung. She also had many stab wounds in her chest, five of which punctured her left lung. The forensic pathologist who conducted the autopsy testified that the cause of death was multiple stab wounds and the manner of death was homicide.

**{11}** The State introduced three letters Defendant wrote while in custody awaiting trial. In one, Defendant acknowledged attacking the victim. In another, she admitted killing the victim, whom she described as sick and obsessed, and wrote that on the day of the killing, she entered the motel room, told Christian to take the children and leave, and "pulled [out] the knife and . . . did what [she] did." In a third letter, Defendant indicated she felt no remorse for what she did, describing the victim as "trash."

## II. DISCUSSION

### A. The District Court Properly Refused a Self-Defense Instruction.

**{12}** Defendant argues that the district court erred in denying her requested self-defense instruction. Although there appears to have been no evidence that the victim had previously

3

threatened Defendant, the defense presented evidence that the victim had a "short temper," that the victim once said she would rather see Christian dead than with another woman, and that the victim once told Christian she could easily buy a gun and shoot him. Defendant testified that she did not intend to kill the victim when she came to the motel room and only brought the two knives from her house in case she needed to defend herself. She also testified that when the hair-pulling fight started, she was afraid the victim would strangle or hit her, although she acknowledged that she expected Christian would not have allowed the victim to really harm her. She claimed that she did not know how she came to stab the victim the first time but admitted that after she first stabbed the victim in the stomach, the victim let go of Defendant's hair and asked if they could "talk." Defendant testified that upon hearing the victim's request to "talk," Defendant lost control of herself. The next thing Defendant claimed she remembered was kneeling over the victim, her hands covered in blood.

**{13}** "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.2d 438. The applicable standards have been addressed thoroughly in our case law.

> A defendant is not entitled to a self-defense instruction unless it is justified by sufficient evidence on every element of self-defense. Those elements are that (1) the defendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the killing resulted from that fear, and (3) the defendant acted reasonably when he or she killed. The first two requirements, the appearance of immediate danger and actual fear, are subjective in that they focus on the perception of the defendant at the time of the incident. By contrast, the third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant.

*State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170 (internal quotation marks and citations omitted). A self-defense instruction is warranted only when the evidence is "sufficient to allow reasonable minds to differ as to all [three] elements of the defense." *State v. Lopez*, 2000-NMSC-003, ¶ 23, 128 N.M. 410, 993 P.2d 727 (internal quotation marks and citation omitted).

**{14}** In determining whether a jury should be permitted to consider the issue of self-defense, it is essential for both trial and appellate courts to honor the constitutional rights of the accused to have the jury decide whether the prosecution has proven legal guilt in accordance with the reasonable doubt and unanimity requirements that are fundamental to our system of justice. *See Rudolfo*, 2008-NMSC-036, ¶ 22. The test is not how the judge would weigh the self-defense evidence as a factfinder; the true test is whether any juror could be justified in having a reasonable doubt about whether the accused acted in self-defense. *See id.* ¶ 27. "For a court to issue a self-defense instruction, there need be only enough evidence to raise a reasonable doubt in the mind of a juror about whether the

4

defendant lawfully acted in self-defense. If any reasonable minds could differ, the instruction should be given." *State v. Sandoval*, 2011-NMSC-022, ¶ 17, 150 N.M. 224, 258 P.3d 1016 (internal quotation marks and citation omitted). If the jury's role as factfinder is not respected, the consequences include reversals and retrials. *See, e.g.*, *State v. Hill*, 2001-NMCA-094, ¶¶ 10-11, 31, 131 N.M. 195, 34 P.3d 139 (reversing a conviction for battery on a peace officer because whether the defendant was the instigator was a question that should have been left to the jury); *State v. Cooper*, 1999-NMCA-159, ¶¶ 18, 24, 128 N.M. 428, 993 P.2d 745 (reversing a conviction because conflicts in a defendant's testimony regarding his fear of the victim presented "a classic issue for the jury to decide"); *State v. Branchal*, 101 N.M. 498, 504, 684 P.2d 1163, 1169 (Ct. App. 1984) (holding that the judge's belief that the defendant was "under no threat of imminent harm" did not justify denial of jury resolution of the contested issue).

**{15}** In *Rudolfo*, the defendant shot and killed an occupant of a vehicle driving away from a house where there had been a violent struggle over a gun. 2008-NMSC-036, ¶¶ 5-6. We upheld the district court's rejection of a self-defense instruction because "[n]one of the three required components of self-defense [were] present." *Id.* ¶¶ 18, 26. We reach the same conclusion in this case. As in *Rudolfo*, there was no appearance in this case that Defendant was threatened with death or great bodily harm at the time of the killing. Necessarily, if the first element is not present, Defendant could not have killed as a result of that threat. And finally, as in *Rudolfo*, even viewing the evidence in the light most favorable to the defendant, the circumstances of this case presented "no basis for the jury to have any doubt that a reasonable person would have found the [killing] to be unnecessary." *Id.* ¶ 26.

**{16}** The facts of this case are similar to those in *Lopez*, in which we rejected a defendant's claim to a self-defense instruction because the defendant's act of killing was not objectively reasonable. 2000-NMSC-003, ¶ 26. In that case, the victim pulled a knife on the defendant after the defendant told the victim to leave the premises. *See id.* ¶ 3. In response, the defendant grabbed a knife from the kitchen and inflicted twenty-one stab wounds on the victim's neck and head, seventeen stab wounds on the victim's hands and arms, and sixteen stab wounds on his torso. *Id.* The defendant then crushed the victim's skull with a rock. *Id.* This Court held that the number of stab wounds and the crushing of the victim's skull exhibited, as in this case, "conduct fueled by hatred or by rage or other strong emotion, but not by fear," and that there was no jury issue as to whether the defendant killed in fear or acted reasonably in killing. *Id.* ¶ 26.

**{17}** Defendant's act of repeatedly stabbing an unarmed woman who was lying on the ground and pleading for an opportunity to talk is the kind of attack that no reasoning juror could doubt was objectively unreasonable. "The law simply does not recognize any right to an acquittal based on a wholly unreasonable claim of a self-defense justification for taking the life of another." *Rudolfo*, 2008-NMSC-036, ¶ 20; *see also State v. Sutphin*, 2007-NMSC-045, ¶ 24, 142 N.M. 191, 164 P.3d 72 (concluding that the defendant's actions were not reasonable and did not support a self-defense instruction when he beat an initial attacker to death after rendering him unconscious). "If at any point Defendant was put in fear by an

5

appearance of immediate death or great bodily harm, that fear could not have been present when the [fatal injuries were inflicted]." *State v. Jacob Gonzales*, 2007-NMSC-059, ¶ 22, 143 N.M. 25, 172 P.3d 162.

**{18}**     In this case, as in *Lopez*, *Rudolfo*, and *Jacob Gonzales*, the response of the accused to any potential threat was indisputably unreasonable. Accordingly, we hold that Defendant was not entitled to a self-defense instruction.

**B.       The District Court Did Not Abuse Its Discretion in Denying Admission of Untimely-Noticed Psychologist's Testimony.**

**{19}**     Defendant was indicted on an open count of murder on May 28, 2008, and arraigned two weeks later. On May 8, 2009, just one month before trial, Defendant filed and gave the court and the prosecution notice of a trial witness list that included a previously undisclosed forensic psychologist. At the same time, the defense disclosed the expert's written report, dated March 2009 but based on a November 2008 evaluation of Defendant, concluding that Defendant had the capacity to form specific intent to kill. But when the State was finally able to interview the expert on June 2, 2009, nine days before trial, the expert told the prosecutor that he had changed his opinion from what was in the written report and would testify at trial that because of cultural issues and a diminished capacity to form intent to kill, Defendant was not able to commit deliberate first-degree murder. When the prosecutor asked why the expert had not disclosed this opinion in his report, the expert explained that at the time of the 2008 evaluation and report, the Defendant was claiming her son did the stabbing, so the expert did not consider Defendant's ability to form a specific intent to kill to be important.

**{20}**     The day after interviewing the expert, the State moved to exclude the testimony, arguing that the defense had not filed a notice in June 2008 that it was raising the defense of incapacity to form specific intent, as would have been required by Rule 5-602(F) NMRA, and that it was too late to do so the week before trial. Two days later, Defendant filed her first and only notice of her intention to present testimony on the lack of specific intent. The notice indicated that she preserved her argument that disclosure of the expert testimony is not required in murder cases in which extreme emotion may have played a part. The district court granted the State's motion to exclude the expert testimony because (1) the filing of Defendant's notice was outside the time limits required by Rule 5-602(F), (2) no good cause was shown for the noncompliant notice, and (3) the state was unable to prepare for or meet the expert testimony at such a late stage in the case.

**{21}**     Defendant now argues that the expert was to testify about Defendant's ability to form *deliberate* intent instead of *specific* intent and that the fair and timely notice provisions of Rule 5-602(F) apply only to the latter and not to the former. Defendant does not address any of the New Mexico precedents which have consistently held that deliberate intent to kill is the specific intent which distinguishes first-degree from second-degree murder. *See State v. Coffin*, 1999-NMSC-038, ¶ 25, 128 N.M. 192, 991 P.2d 477 (reaffirming that "the

6

Legislature intended to distinguish first degree murder from second degree murder by the element of a deliberate intent to kill"). And Defendant does not develop her unprecedented construction of Rule 5-602(F) with any principled analysis. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶15, 137 N.M. 339, 110 P.3d 1076 (explaining that the appellate court does not review unclear or undeveloped arguments). Defendant also cites no authority from any jurisdiction supporting her argument, so we may conclude that no such authority exists. *See Lee v. Lee (In re Adoption of Doe)*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) ("We assume where arguments in briefs are unsupported by cited authority [that] counsel . . . was unable to find any supporting authority."). Finally, Defendant never articulated or preserved this argument below. *See* Rule 12-216(A) NMRA (requiring an appellant to raise an issue below with sufficient specificity to invoke the trial court's ruling before the appellate court will address the issue).

**{22}** Accordingly, we address only Defendant's arguments that constructive notice to the prosecution constituted good cause under the rule for dispensing with the formal notice requirement, because intent is always an element of first-degree murder and because enlisting "a well-known forensic psychologist gave the State notice that Defendant's exact mental state would be in issue at trial."

**{23}** A trial court's decision to admit or exclude evidence for failure to comply with notice and disclosure requirements is reviewed on appeal for an abuse of discretion. *See State v. Harper*, 2011-NMSC-044, ¶¶ 9, 15-16, 150 N.M. 745, 266 P.3d 25 (reviewing for an abuse of discretion the district court's exclusion of prosecution witnesses for failure to comply with witness interview deadlines); *McCarty v. State*, 107 N.M. 651, 655, 763 P.2d 360, 364 (1988) (reviewing for an abuse of discretion the district court's exclusion of defense witnesses for failure to comply with alibi notice deadlines).

**{24}** Rule 5-602(F) reads,

> If the defense intends to call an expert witness on the issue of whether the defendant was incapable of forming the specific intent required as an element of the crime charged, notice of such intention shall be given at the time of arraignment or within twenty (20) days thereafter, unless upon good cause shown, the court waives the time requirement of this rule.

**{25}** This rule is clear. Defendant was required to notify the State of her intention to call an expert on the issue of specific intent either at the time of her arraignment or within twenty days after her arraignment. Defendant did not provide such notice until a year after her arraignment and approximately a week before trial, and then only after the State discovered a planned specific intent defense that was disclosed neither by a Rule 5-602(F) notice nor by the misleading written report supplied with the defense's witness disclosure.

**{26}** Defendant's novel contention that she should be excused from the Rule 5-602(F) notice requirements because intent is always an issue in a murder prosecution is inconsistent

with the very purpose of the rule. While the nature of a defendant's intent is always at issue in a homicide case, whether a defendant had the mental capacity to form that intent is not. This difference is precisely why Rule 5-602(F) is in place—to give notice to the State that a defendant will be raising a complex psychological issue so that the State may take the steps necessary to prepare to meet and counter it. Defendant asks us to hold, in essence, that Rule 5-602(F) is meaningless in murder cases. We will not do so.

**{27}** Defendant's second argument of good cause for late disclosure is also an argument of constructive notice. She suggests that because she listed a forensic psychologist as a possible witness one month before trial, the State should have figured out that Defendant's ability to form specific intent would be the subject of the witness's testimony, excusing Defendant from filing the specific notice required by Rule 5-602(F).

**{28}** Although there is no New Mexico case addressing a constructive notice excuse for failing to comply with Rule 5-602(F) in particular, our Court of Appeals has rejected similar arguments in applying the counterpart insanity defense notice provisions of Rule 5-602(A) in *State v. Silva*, 88 N.M. 631, 631, 545 P.2d 490, 490 (Ct. App. 1976), and *State v. Young*, 91 N.M. 647, 650, 579 P.2d 179, 182 (Ct. App. 1978). Rule 5-602(A) governs notice of an intent to present a defense of "not guilty by reason of insanity," and Rule 5-602(F) governs notice of an intent to present a defense that "defendant was incapable of forming the specific intent required as an element of the crime charged," but in all other respects they are identical in requiring that notice to the prosecution must be "given at . . . arraignment or within twenty (20) days thereafter, unless upon good cause shown, the court waives the time requirement of this rule."

**{29}** In *Silva*, the defendant argued explicit notice was not necessary under former Rule 35(a)(1)—the predecessor to Rule 5-602(A)—because he filed a motion nine days after his arraignment requesting a psychiatric examination. *See Silva*, 88 N.M. at 631, 545 P.2d at 490. The motion indicated that counsel did not know whether the defendant was sane when he committed the alleged criminal acts; the psychiatric examination was sought to find that out. *See id. Silva* rejected the defendant's argument that filing a request for a psychiatric examination constituted constructive notice that excused providing the required notice of intent to raise an insanity defense under the rule. *See id.* at 631-32, 545 P.2d at 490-91.

**{30}** *Young* rejected another attempt to substitute constructive notice for the requirements of the rule. 91 N.M. at 650, 579 P.2d at 182. Defense counsel argued that the state was on notice a month before trial because a report filed after a court-ordered mental examination "suggested a possible insanity defense," and that he had good cause for the late notice because he could not contact the psychologist who issued the report until the day before trial, when he first learned of the psychologist's intended testimony. *Id.* Defense counsel did not notify the prosecution, even at that late date, and withheld the information until after the prosecution rested its case-in-chief. *Id.* The court held that "[n]otice of the [insanity] defense came too late for the prosecution to prepare to meet it" and that in those circumstances "[t]here was no abuse of discretion in excluding the tendered testimony" of

8

the expert.  *Id.*

**{31}**     The record in this case indicates that two months after her June 9, 2008, arraignment, Defendant filed a motion related to her scheduled psychological examination by the forensic psychologist who later appeared on the pretrial witness list.  Like the defendant in *Silva*, Defendant gave no explicit timely notice of her intention to raise any issue of her capacity to form intent.  As in *Young*, notice of the psychological defense came too late for the prosecution to prepare to meet it, despite the fact Defendant knew about the possible psychological defense well before trial but did not provide the timely notice required by Rule 5-602.

**{32}**     "A defendant's right to present evidence on [her] own behalf is subject to [her] compliance with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *State v. Sanders*, 117 N.M. 452, 459-60, 872 P.2d 870, 877-78 (1994) (internal quotation marks and citation omitted).

**{33}**     Courts should apply the extreme sanction of exclusion of a party's evidence sparingly.  The decision to exclude evidence calls on judicial discretion to weigh all the circumstances, including willfulness in violating the discovery rule, the resulting prejudice to the opposing party, and the materiality of the precluded testimony.  *See McCarty*, 107 N.M. at 655, 763 P.2d at 364.  "Before resorting to preclusion, a trial judge should weigh not only the prejudicial effect of noncompliance on the immediate case, but also the necessity to enforce the rule to preserve the integrity of the trial process." *Id.*  *McCarty* found an abuse of discretion in a trial court's exclusion of alibi witnesses where (1) the rule violation was not willful, (2) the state was able to interview and prepare for the testimony and was not prejudiced by the late notice, and (3) the precluded testimony was critical to the defense's ability to confront and cross-examine the state's key witness.  *Id.*  Accordingly, this Court held that "[n]o harm is done to the integrity of the notice-of-alibi rule by prohibiting the preclusion of witness testimony as a sanction under such circumstances." *Id.; see also Harper*, 2011-NMSC-044, ¶¶ 22, 25, 27-28 (reversing exclusion of the state's witnesses where failure to comply with discovery requirements was not willful or in bad faith and where the defendant was not prejudiced).

**{34}**     In this case, the district court held a hearing on the State's motion to exclude and entered an order granting the motion.  The order recited that Defendant made no attempt to comply with Rule 5-602(F) until two days after the State filed its motion; that the expert's written report misled the State, which had neither actual nor constructive notice of the diminished capacity defense; that Defendant showed no good cause for the late notice; and that the inability to meet or prepare for the undisclosed defense at such a late stage prejudiced the State.  Because Defendant has provided us with no record of the motion hearing to support any argument that the court abused its discretion in making those findings, we must affirm the exclusion of the expert testimony.  *See State v. Rojo*, 1999-NMSC-001, ¶ 53, 126 N.M. 438, 971 P.2d 829 (holding that where there is a "deficient record, every presumption must be indulged by the reviewing court in favor of the correctness" of the

9

district court's judgment (internal quotation marks and citation omitted)); *Barnett v. Cal M, Inc.*, 79 N.M. 553, 556, 445 P.2d 974, 977 (1968) (holding that a party "desiring review of a ruling of the trial court has a duty to see that a record is made of the proceedings he desires reviewed; otherwise the correctness of such ruling cannot be questioned").

## C.     The District Court Did Not Abuse Its Discretion in Excluding Expert Testimony That the Victim's Wounds Were Not Immediately Fatal.

**{35}**     Defendant also argues that the court abused its discretion in refusing admission of medical testimony that the victim's "wounds were not inevitably fatal and that no vital organ was irreparably injured" as evidence that Defendant lacked the deliberate intent to kill the victim. The district court granted the State's pretrial motion to exclude on the grounds that the medical testimony was not relevant under Rule 11-402 NMRA and that the danger of unfair prejudice and  potential to confuse the issues or mislead the jury would substantially outweigh any probative value and call for exclusion under Rule 11-403.

**{36}**     We review the district court's decision to admit or exclude evidence for an abuse of discretion. *See State v. Downey*, 2008-NMSC-061, ¶ 24, 145 N.M. 232, 195 P.3d 1244 ("An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." (quoting *State v. Armendariz*, 2006-NMSC-036, ¶ 6, 140 N.M. 182, 141 P.3d 526)). In particular, rulings on matters of doubtful relevance under Rule 11-402 and the counterbalances to relevant evidence under Rule 11-403 are left to the broad discretion of the district court. *See State v. Chamberlain*, 112 N.M. 723, 726, 819 P.2d 673, 676 (1991) (recognizing great discretion vested in the district court in applying Rule 11-403); *see also State v. Wesson*, 83 N.M. 480, 482, 493 P.2d 965, 967 (Ct. App. 1972) (stating that "[w]here the materiality of the evidence is doubtful, the admission of such evidence is within the discretion of the [district] court").

**{37}**     The excluded evidence had very little, if any, probative value. The victim died quickly, before police or paramedics arrived, as a result of the thirty-one stab wounds Defendant inflicted on her, piercing her lungs repeatedly from the front and the back and severing her jugular vein. The wounds were inflicted with such force that both knives were bent. The fact that the victim may have survived for a short time after Defendant's deadly attack sheds little, if any, light on Defendant's state of mind. *See State v. Garcia*, 114 N.M. 269, 275, 837 P.2d 862, 868 (1992) (explaining that evidence of what happened after the defendant stabbed the victim did not give rise to an inference as to the defendant's state of mind before the stabbing). Because the testimony lacked significant probative value, it was not an abuse of discretion for the district court to exclude it. *See State v. Blea*, 101 N.M. 323, 326, 681 P.2d 1100, 1103 (1984) ("No error occurs when the judge excludes expert testimony where the probative value of that testimony is slight.").

**{38}**     Even if the evidence had any slight  relevance, the danger that the jury might be confused by testimony related to whether the victim could have survived the wounds in different circumstances would have outweighed its limited probative value. "Although

relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues or misleading the jury." Rule 11-403 NMRA. Evidence suggesting that the victim's wounds would not inevitably cause death could have led the jury to speculate whether the victim died because she did not receive immediate medical attention for those wounds. This gives rise to complicated disputes that did not need to be addressed in this case and would not have been relevant to Defendant's guilt or innocence. *See State v. Montoya*, 2003-NMSC-004, ¶¶ 11-12, 19, 133 N.M. 84, 61 P.3d 793 (explaining the differences between a "but for" and a "proximate" cause analysis under our homicide jury instructions and holding that "an individual may be a legal cause of death even though other significant causes significantly contributed to the cause of death"); *see also State v. Jose Ray Gonzales*, 95 N.M. 636, 639, 624 P.2d 1033, 1036 (Ct. App. 1981) (upholding the exclusion of confusing evidence in an aggravated battery case because "[e]vidence as to who was the aggressor in later incidents would only confuse the issue of who was the aggressor when [the victim] was shot"), *overruled on other grounds by Buzbee v. Donnelly*, 96 N.M. 692, 701, 634 P.2d 1244, 1253 (1981). Because the district court reasonably viewed the expert's testimony as having little relevance and as being likely to confuse the issues or mislead the jury, we hold that the district court did not abuse its discretion when it excluded the evidence.

**D.**    **The District Court Did Not Abuse Its Discretion in Denying Admission of Letters Defendant Wrote While Incarcerated.**

**{39}**    The State introduced at trial three letters Defendant wrote from jail which tended to prove that Defendant killed the victim and had no remorse for doing so. The district court accepted the evidence as admissions of a party-opponent under Rule 11-801(D)(2) NMRA. Defendant introduced five other letters of the more than fifty Defendant had written from jail, which arguably indicated that at times she had expressed remorse for the killing and made claims to have acted in self-defense. Defendant argued that the letters the State introduced, which the court admitted, were taken out of context and that the rule of completeness, Rule 11-106 NMRA, allowed the admission of the letters Defendant introduced in order to provide context and show Defendant's true state of mind during the killing.

**{40}**    Rule 11-106 provides in its entirety: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

**{41}**    "The primary purpose behind the rule of completeness is to eliminate misleading or deceptive impressions created by creative excerpting." *State v. Barr*, 2009-NMSC-024, ¶ 34, 146 N.M. 301, 210 P.3d 198, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37, 275 P.3d 110. The principle behind the rule of completeness is that "the whole of a [communication] must be taken together." *Id.* (internal quotation marks and citation omitted). "The classic illustration of a violation of the rule of completeness is

11

quoting 'there is no God' from the biblical phrase '[t]he fool hath said in his heart, there is no God.'" *Id.* (citation omitted).

**{42}** The rule of completeness did not apply to the letters Defendant tried to admit. This is not a case in which creative excerpting of a writing leads to deceptive or misleading impressions of the actual statement. The State admitted the entirety of three letters Defendant wrote. The fact that other letters Defendant wrote were not also admitted does not distort the context of the particular letters that were admitted. If the rule functioned the way Defendant suggests, then admission of any oral or written statement of a party-opponent would automatically require the admission of all self-serving hearsay statements of the party on the same topic. Defendant cites no authority which stands for that proposition, and we know of none. In *Barr*, we held that allowing the state to use the rule of completeness to introduce the entirety of a hearsay videotape was an abuse of discretion where the state failed to show any contents of the previously admitted portions that it alleged were taken out of context. 2009-NMSC-024, ¶¶ 29, 37, 45; *see also State v. Sanders*, 117 N.M. 452, 458, 872 P.2d 870, 876 (1994) (holding that the court did not err in denying admission of the remainder of a twenty-two-page statement of the defendant on which the prosecution had cross-examined the defendant about two particular passages).

**{43}** Accordingly, we hold that the district court did not abuse its discretion when it determined that the rule of completeness did not require the admission of Defendant's other letters.

### E.     The District Court Did Not Abuse Its Discretion in Denying Defendant's Motion for a New Trial.

**{44}** After she was convicted, Defendant unsuccessfully moved for a new trial under Rule 5-614 NMRA. She argued that the district court erred when it excluded her expert testimony related to her capacity to form murderous intent and when it excluded the letters she wrote from jail, both arguments that we have separately addressed and rejected.

**{45}** Rule 5-614(A) gives a district court authority to determine whether justice requires relief from a conviction in the circumstances of a particular case. ("When the defendant has been found guilty, the court on motion of the defendant, or on its own motion, may grant a new trial if required in the interest of justice.") In recognition of that broad discretion, an appellate court will reverse the district court's decision only on a showing of abuse of discretion. *See State v. Chavez*, 98 N.M. 682, 683, 652 P.2d 232, 233 (1982).

**{46}** Because nothing Defendant complains about amounted to an error at trial, the interest of justice did not require a new trial. Accordingly, the district court did not abuse its discretion when it denied Defendant's motion for a new trial.

### F. There Is No Cumulative Error Because There Was No Error.

12

**{47}** Defendant argues that the cumulative effect of the various alleged errors outlined above denied her a fair trial. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *modified on other grounds by State v. Gallegos*, 2007-NMSC-007, ¶ 17, 141 N.M. 185, 152 P.3d 828. The cumulative error doctrine is strictly applied and may not be successfully invoked if "the record as a whole demonstrates that the defendant received a fair trial." *State v. Trujillo*, 2002-NMSC-005, ¶ 63, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted). Cumulative error has no application if the district court committed no errors and if the defendant received a fair trial. *See State v. Seaton*, 86 N.M. 498, 501, 525 P.2d 858, 861 (1974). Because the district court committed no error in this case, there is no cumulative error. *See State v. Salas*, 2010-NMSC-028, ¶ 40, 148 N.M. 313, 236 P.3d 32.

## III.  CONCLUSION

**{48}** Finding no error, we affirm Defendant's conviction.

**{49}  IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *State v. Guerra*, Docket No. 31,973**

**AE**          **APPEAL AND ERROR**
AE-SR          Standard of Review

**CL**          **CRIMINAL LAW**
CL-CF          Capital Felony
CL-MU          Murder

CL-SD          Self-defense
CL-SI          Specific Intent

**CA**          **CRIMINAL  PROCEDURE**
CA-CE          Cumulative Error
CA-JI          Jury Instructions
CA-NO          Notice
CA-NT          New Trial

**EV**          **EVIDENCE**
EV-DO          Documentary Evidence
EV-EW          Expert Witness

**JD**          **JURISDICTION**
JD-SM          Subject Matter
JD-SC          Supreme Court

**MC**          **MENTAL COMPETENCY**
MC-MI          Mental Illness and Competency Statutes