This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.                 **NO. A-1-CA-35242**

**DEVIN DOMINGUEZ,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Laurie Blevins, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1} A jury convicted Defendant Devin Dominguez of second degree murder, aggravated burglary, and conspiracy to commit aggravated battery. Defendant argues that (1) the district court erred by denying Defendant's self-defense instruction; (2) there was insufficient evidence to convict Defendant of aggravated burglary and conspiracy to commit aggravated battery; (3) he was denied his right to present a defense by the district court's exclusion of certain evidence and its denial of a continuance; (4) his due process rights were violated by the admission of blood-spatter evidence; and (5) he received ineffective assistance of counsel. We affirm.

**BACKGROUND**

{2} On November 19, 2013, Defendant and Michael Stricklin (Co-Conspirator) accompanied Amber Armijo to the apartment of Raul Reyes (Victim) to help Armijo retrieve her purse and cell phone from Victim's possession. Armijo had told Defendant and Co-Conspirator that the previous night while attending a party at Victim's residence, Victim and Victim's wife had beaten her up then kicked her out of the apartment without her belongings. After Victim answered the door and allowed Armijo to enter the apartment to look for her things, Victim and Armijo started yelling at each other. At some point, Defendant believed that Victim was reaching for a weapon and preemptively punched Victim in the nose, causing Victim's nose to bleed. Victim and Defendant got into a fight, during which they

2

wrestled and threw a liquor bottle at each other, Victim first throwing it at Defendant, who was able to block it and did not "receive[] much damage from [it,]" and Defendant then throwing it at Victim, striking Victim in his shoulder or back area according to Defendant. After less than a minute of wrestling, both men "got up" and then "came at each other again." Defendant, who admitted to kicking Victim in the ribs and jaw and stomping on Victim while Victim was on the floor, was eventually able to "tak[e] the upper hand" in the fight, and Victim "gave up."

{3}     Victim died from his injuries, and Defendant was charged with second degree murder, conspiracy to commit second degree murder, aggravated burglary, conspiracy to commit aggravated burglary, conspiracy to commit aggravated battery, and tampering with evidence. Following a five-day jury trial, Defendant was convicted of second degree murder, aggravated burglary, and conspiracy to commit aggravated battery. Because this is a memorandum opinion and the parties are familiar with the facts, we reserve discussion of additional facts where pertinent to our analysis.

**DISCUSSION**

**I.      The District Court Did Not Err in Refusing to Instruct the Jury on Defendant's Theory of Self Defense**

3

**{4}** Defendant argues that the district court erred in refusing to give the jury his requested instruction on self defense.[1] At trial, Defendant tendered an instruction in writing based on UJI 14-5183 NMRA (self defense, deadly force by defendant). We review the district court's refusal to give the jury Defendant's requested instruction on deadly force self defense for reversible error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 ("The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error.").

**{5}** "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *Guerra*, 2012-NMSC-014, ¶ 13. "When considering a defendant's requested instructions, [appellate courts] view the evidence in the light most favorable to the giving of the requested instructions." *State v. Swick*, 2012-NMSC-018, ¶ 60, 279 P.3d 747 (alteration, internal quotation marks, and citation omitted). However, a defendant is entitled to an instruction on his or her

---

[1] The record indicates that Defendant also tendered a defense-of-another instruction—premised on Defendant's fear that Victim was going to harm Armijo—that was also refused by the district court. While Defendant's brief in chief mentions in passing both instructions, he proceeds to develop an argument only regarding self defense. Because Defendant wholly fails to advance any argument regarding error in refusing Defendant's defense-of-another instruction, we decline to entertain whether the district court erred in refusing the defense-of-another instruction and instead focus our analysis on the self-defense instruction. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts are under no obligation to review unclear or undeveloped arguments).

4

theory of the case *only* "if evidence has been presented that is sufficient to allow reasonable minds to differ as to all elements of the offense." *State v. Baxendale*, 2016-NMCA-048, ¶ 10, 370 P.3d 813 (internal quotation marks and citation omitted). A defendant claiming self defense "is not entitled to a self-defense instruction unless it is justified by sufficient evidence on every element of self-defense." *State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170. "[F]ailure to instruct the jury on a defendant's theory of the case is reversible error only if the evidence at trial supported giving the instruction." *Baxendale*, 2016-NMCA-048, ¶ 21. "If a court determines that a reasonable jury must find the defendant's use of . . . force to be unreasonable under the circumstances, a self-defense instruction is not appropriate." *Rudolfo*, 2008-NMSC-036, ¶ 20. "It is important to view the circumstances at the time the . . . force was used by the defendant and not at some earlier point." *Id.* ¶ 18.

{6}     UJI 14-5183 is an instruction to be used "in nonhomicide cases when the self-defense theory is based on . . . reasonable grounds to believe a design exists to do some great bodily harm." UJI 14-5183 use note 1. To be entitled to a self-defense instruction under UJI 14-5183, there must be evidence that (1) there was an appearance of immediate danger of death or great bodily harm to the defendant as a result of a specific unlawful act, felony, or act which would result in death or some great bodily harm as established by the evidence; (2) the defendant was in

fact put in fear of immediate death or great bodily harm and committed a particular act because of that fear; and (3) the apparent danger would have caused a reasonable person in the same circumstances to act as the defendant did. *Id.* "The first two requirements, the appearance of immediate danger and actual fear, are subjective in that they focus on the perception of the defendant at the time of the incident. By contrast, the third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant." *State v. Coffin*, 1999-NMSC-038, ¶ 15, 128 N.M. 192, 991 P.2d 477. Thus, in requesting an instruction under UJI 14-5183, the defendant must first identify the act claimed to have caused the defendant's subjective apprehension and must do so with "at least enough detail to put the act in context of the evidence." UJI 14-5183 use note 3. The defendant must also identify the act the defendant took in response "because of that fear[.]" UJI 14-5183 use note 4.

{7}    Here, Defendant tendered the following self-defense jury instruction:

Evidence has been presented that [D]efendant acted in self defense. . . . Defendant acted in self defense if:

1. There was an appearance of immediate danger of death or great bodily harm to [D]efendant as a result of [Victim]; and

2. [D]efendant was in fact put in fear of immediate death or great bodily harm and because of that fear; and [sic]

3. The apparent danger would have caused a reasonable person in the same circumstances to act as [D]efendant did.

6

Initially, we note the facial deficiency of Defendant's tendered instruction given that Defendant failed to identify (1) the act that put him in fear of death or great bodily harm, and (2) the act he committed in response that he contends was justified by his fear. These deficiencies appear to have been corrected by trial counsel's explanation to the district court that the act creating the appearance of immediate danger to Defendant was Victim "striking [Defendant] with [a liquor] bottle[,]" and that Defendant's reaction in self defense was "thr[owing] the bottle" at Victim. But Defendant was not charged with aggravated battery with a deadly weapon, in which case a self-defense instruction related to the specific acts of Victim and Defendant throwing the bottle at each other might be warranted. Defendant was charged with second degree murder based not on Defendant's admitted act of striking Victim with the bottle but on acts that occurred *after* Defendant struck Victim with the bottle.

{8}    As the district court pointed out, and as Defendant himself testified, the fight did not end when Defendant threw the bottle back at Victim. *After* Defendant threw the bottle and both men got to their feet, they both "came at each other again." By Defendant's own account, Defendant was eventually able to "tak[e] the upper hand" in the fight, and Defendant admitted—again, to the jury—that he continued to kick and stomp on Victim while Victim was on the floor. In other words, the evidence did not support giving the self-defense instruction Defendant

7

tendered because the acts on which that instruction was premised occurred at an earlier point in time, not at the time when Defendant was alleged to have used deadly force. Even viewed in the light most favorable to Defendant, we cannot say the district court erred in concluding that no reasonable person "would respond in the same way" that Defendant did, thereby rendering it inappropriate to tender, and proper for the district court to deny, the deadly force self-defense instruction.

**{9}** Defendant additionally argues that his oral request "that the jury be instructed as to both deadly and non-deadly force" adequately preserved the separate question of whether the district court erred by refusing to give an instruction based on UJI 14-5181 NMRA (self defense, nondeadly force by defendant). We need not address whether this argument was preserved because, even assuming it was, we conclude for the same reasons as above that the district court did not err by refusing to instruct the jury on nondeadly force self defense. According to Defendant, "because under [Defendant's] version he merely broke [Victim's] nose but did not injure him severely enough to cause death, he was entitled to a jury instruction of self-defense . . . by non-deadly force." But by Defendant's own testimony, Defendant not only punched Victim in the nose but also kicked and stomped on him repeatedly after "dropping" Victim, i.e., when Victim was in a defenseless position on the floor. Under the facts of this case, we

cannot say the district court erred in refusing to instruct the jury on Defendant's theory of nondeadly force self defense.

**II.  There Was Sufficient Evidence to Convict Defendant of Aggravated Burglary and Conspiracy to Commit Aggravated Battery**

{10}  Defendant next argues that there is insufficient evidence to sustain his convictions for aggravated burglary and conspiracy to commit aggravated battery. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We consider each of Defendant's arguments in turn.

**A.  Aggravated Burglary**

{11}  The jury was instructed in pertinent part that to find Defendant guilty of aggravated burglary, the State had to prove beyond a reasonable doubt that Defendant (1) entered a dwelling house without authorization, (2) entered the dwelling house with the intent to commit aggravated battery once inside, and (3)

9

touched or applied force to Victim in a rude or angry manner while entering or leaving or while inside. Defendant argues that the evidence undisputedly established that Victim authorized Defendant to enter the apartment, meaning that the State failed to establish the first essential element: that Defendant entered Victim's apartment without authorization. Specifically, Defendant contends that in a 911 tape that was played for the jury, Victim can be heard saying, "She can look; her shit ain't here." According to Defendant, "[t]his authorized [Defendant] and Ms. Armijo to go into the apartment to look for her stuff." We disagree.

{12}    As an initial matter, we note that Defendant fails to establish that the 911 call was, in fact, played for the jury. Defendant's brief in chief states, "the call was played for the jury[,]" but provides no citation to the record to support that claim. It is not this Court's obligation to search the record to determine whether the jury indeed heard the 911 call containing evidence that Defendant purports established indisputably that Defendant's entry into Victim's apartment was authorized. *See Muse v. Muse*, 2009-NMCA-003, ¶ 42, 145 N.M. 451, 200 P.3d 104 ("We are not obligated to search the record on a party's behalf to locate support for propositions a party advances or representations of counsel as to what occurred in the proceedings."). Even assuming that the jury heard the recording of the 911 call that Victim made on November 19, it still fails to establish that Defendant was authorized to enter the apartment.

**{13}** The recording evinces that Victim called 911 to report that four or five people were trying to "break into" his apartment. At one point during the call, Victim reports, "They just broke out my bathroom window." The dispatcher then asks, "Are they in your house?" In the background, Victim can be heard talking to Armijo and Defendant. Armijo asks Victim where her cell phone and purse are, and Victim denies that he has her belongings. Defendant then says, "Well, let her look for it[,]" to which Victim responds, "She can look[.]" At most, this might establish that *Armijo* was authorized, at that point, to enter the apartment, but we fail to see, and Defendant fails to explain, how this definitively established that Defendant was authorized to enter. Moreover, the jury heard Armijo testify that Defendant "was going to go through the window, but [Victim] had already opened the door," and that after Victim initially opened the door, Victim made a motion like he was "going to slam the door" but was prevented from doing so by Co-Conspirator. From this, and viewed in the light most favorable to sustaining the verdict, we conclude that there was sufficient evidence that Defendant entered Victim's apartment without authorization.

**{14}** Because Defendant does not challenge the sufficiency of the evidence supporting either of the other elements of aggravated burglary, we affirm Defendant's conviction on this count.

**B.    Conspiracy to Commit Aggravated Battery**

11

**{15}** To find Defendant guilty of conspiracy to commit aggravated battery, the jury had to find that (1) Defendant and another person, by words or acts, agreed together to commit aggravated battery, and (2) Defendant and the other person intended to commit aggravated battery. Defendant's entire argument on this issue is that the evidence showed that Defendant and Co-Conspirator only " 'conspired' to act in the defense of another if needed" and that that "is not the same thing as conspiring to commit an aggravated battery." Defendant cites no authority, identifies no particular facts, and develops no cogent argument as to how either element of conspiracy to commit aggravated battery is not supported by substantial evidence. We, therefore, deem Defendant's contention on this issue waived. *See* Rule 12-318(A)(4) NMRA (providing that "[a] contention that a verdict . . . is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence").

**III.    Defendant Was Not Deprived of His Right to Present a Defense**

**{16}** Defendant next contends that he was deprived of his right to present a defense based on the district court's (1) exclusion of two pieces of evidence that Defendant sought to admit, and (2) denial of Defendant's request for a continuance two weeks before trial. "An evidentiary ruling within the discretion of the court will constitute reversible error only upon a showing of an abuse of discretion . . .

12

and a demonstration that the error was prejudicial rather than harmless[.]" *State v. Jett*, 1991-NMSC-011, ¶ 8, 111 N.M. 309, 805 P.2d 78. Likewise, "the denial of a motion for a continuance rests within the sound discretion of the [district] court[,]" and "[t]he burden of establishing an abuse of discretion rests with [the d]efendant." *State v. Hernandez*, 1993-NMSC-007, ¶ 18, 115 N.M. 6, 846 P.2d 312.

**A.    The District Court's Exclusion of Evidence Was Proper and Did Not Deprive Defendant of His Right to Present a Defense**

**1.    Defendant Fails to Establish That the District Court Abused Its Discretion in Excluding the Lapel Camera Recording**

{17}    Defendant first argues that the district court erred by excluding a lapel camera recording showing "the five people removed from [Victim's apartment] discussing what they were going to tell the police." Prior to trial, defense counsel indicated he wished to play the entire recording—lasting one hour and twenty minutes—to the jury because, according to counsel, it was "the basis for [the investigating officer's] investigation[,]" i.e., it was "the key piece of evidence [the officer] had, in terms of deciding what he was going to do during his investigation in this case." The State opposed admitting the recording, arguing that "there just couldn't be more hearsay on th[e] tape." Defendant countered that the recording fell within Rule 11-803(6) NMRA, the exception to the hearsay rule for "records of a regularly conducted activity." The State then clarified that even if the recording itself was admissible under Rule 11-803(6), "[t]he statements contained within the

13

recording are a second level of hearsay that still must fit under an exception." Defendant argued generally that the statements were either present sense impressions or statements by an alleged co-conspirator and, thus, exceptions to the hearsay rule or not hearsay at all. *See* Rule 11-801(D)(2)(e) NMRA (providing that statements "offered against an opposing party" that are "made by the party's co-conspirator during and in furtherance of the conspiracy" are not hearsay); Rule 11-803(1) (providing that statements "describing or explaining an event or condition, made while or immediate after the declarant perceived it[,]" are not excluded by the rule against hearsay).

{18} The district court took the issue under advisement and ruled the next day that the lapel recording would not be admitted. In explaining its decision, the district court noted that it had "look[ed] through the rules" and "read a bit of case law on it" but could not "find that there was an avenue" to admitting the evidence. Specifically, the district court ruled the evidence to be inadmissible because of the risk that the jury would improperly use information contained in the statements made in the recording for substantive evidence.

{19} On appeal, Defendant argues that in light of his defense theory—that Co-Conspirator was the one who actually killed Victim—the recording was "highly relevant" because it showed that Co-Conspirator "determined to blame the murder on [Defendant]." Defendant cites no authority in support of this contention, nor

14

does he offer anything more than the conclusory statement that the exclusion of this evidence somehow prevented Defendant from presenting his defense. Again, we reiterate that because we are under no obligation to review unclear or undeveloped arguments, and because we will not consider an issue if no authority is cited in support of the issue, we conclude that Defendant has failed to show that the district court abused its discretion in refusing to admit the lapel recording. *See Guerra*, 2012-NMSC-014, ¶ 21; *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129.

**2.      Defendant Fails to Establish That the District Court Abused Its Discretion in Excluding Evidence That a Key Witness Had Been Threatened and Intimidated**

**{20}** Defendant next contends that the district court erred by excluding evidence of "a conviction against [Co-Conspirator's] cousin for threatening [a witness] about this case and offering to pay her $5,000 to testify that it was all [Defendant]." As an initial matter, we note that Defendant has failed, in violation of the Rules of Appellate Procedure, to (1) identify where in the record this issue was preserved, and (2) provide citations to the record to support the facts described. *See* Rule 12-318(A)(4) (providing that the appellant's brief in chief shall contain "an argument which, with respect to each issue presented, shall contain a statement of the applicable standard of review, the contentions of the appellant, and a statement explaining how the issue was preserved in the court below, with

citations to authorities, record proper, transcript of proceedings, or exhibits relied on"). Moreover, Defendant does nothing more after making this bald contention than cite two evidentiary rules and a single case for general propositions of law, and offer the conclusory statement, "The fact that a missing witness in this case was threatened not to appear in this case or, should she appear, offered money to testify in a certain way is highly relevant."

{21} As with Defendant's other challenge to the exclusion of evidence, we are under no obligation to review unclear or undeveloped arguments. *See Guerra*, 2012-NMSC-014, ¶ 21. To further address this issue would require that we not only guess at what Defendant's argument might be but also search the record in support of evidence to support whatever we may ultimately be able to surmise is Defendant's claim of legal error. Neither of those things will we do. *See Muse*, 2009-NMCA-003, ¶ 42; *State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (refusing to review the defendant's argument that evidence should have been excluded under Rule 11-403 NMRA where the defendant "neither explained how Rule 11-403 applies in this matter nor developed a factual basis that would allow us to evaluate this claim"). We therefore hold that the district court did not abuse its discretion in excluding the evidence at issue.

**B.** **The District Court's Denial of Defendant's Motion for a Continuance Did Not Deprive Defendant of His Right to Present a Defense**

16

**{22}** Defendant's claim that the district court's denial of his motion for a continuance deprived him of a right to present a defense fares no better than his excluded-evidence arguments. Defendant contends that the district court should have granted his request for a continuance two weeks before trial when Defendant learned that the State intended to sever Defendant's case from Co-Conspirator's, whose whereabouts were unknown and for whom a bench warrant had been issued five months prior. According to Defendant, the district court's denial of his motion "created the evidentiary errors and denied [Defendant] the ability to offer his theory of defense." Defendant complains that because Defendant and Co-Conspirator "were to be tried together[,] trial counsel had not prepared alternative methods of presenting the evidence" that would have been admissible against Co-Conspirator. Again, given that our review of the denial of Defendant's motion is for an abuse of discretion, *see Hernandez*, 1993-NMSC-007, ¶ 18, and because Defendant offers nothing more than bald assertions, unsupported by citations to authority or facts in the record, *see Guerra*, 2012-NMSC-014, ¶ 21, we conclude that Defendant has failed to establish error on the part of the district court in this respect.

**IV.     The District Court's Admission of Blood-Spatter Evidence Did Not Violate Defendant's Due Process Rights**

**{23}** Defendant next argues that the district court erred by allowing the admission of blood-spatter evidence that was introduced through the testimony of Detective

17

Carl Ross, who was qualified as an expert in blood spatter and crime scene reconstruction. Defendant's argument is without merit.

**{24}** Initially and critically, we note that Defendant objected to neither Detective Ross being qualified as an expert nor any testimony he provided related to blood spatter. "This Court reviews unpreserved evidentiary matters for plain error." *State v. Lopez*, 2018-NMCA-002, ¶ 34, 410 P.3d 226, *cert. denied*, 2017-NMCERT-___ (No. S-1-SC-36626, Oct. 20, 2017). "The plain-error rule, however, applies only if the alleged error affected the substantial rights of the accused." *Id.* (internal quotation marks and citation omitted). We apply the rule "only if we have grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *State v. Dylan J.*, 2009-NMCA-027, ¶ 15, 145 N.M. 719, 204 P.3d 44 (internal quotation marks and citation omitted).

**{25}** Defendant contends that the admission of Detective Ross's testimony regarding blood spatter violated Defendant's right to fundamental fairness under the Due Process Clause. In support of this contention, Defendant cites *Dowling v. United States*, 493 U.S. 342 (1990). In *Dowling*, the United State Supreme Court recognized that the introduction of certain types of evidence "has the potential to prejudice the jury" and considered the question of "whether it is acceptable to deal with the potential for abuse through nonconstitutional sources like the Federal Rules of Evidence, or whether the introduction of [such] evidence is so extremely

18

unfair that its admission violates fundamental conceptions of justice." *Id.* at 352 (footnote, internal quotation marks, and citation omitted). The Court then noted that "the Due Process Clause has limited operation" and that the Court had "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.*

**{26}**     Defendant wholly fails to explain how the admission of Detective Ross's testimony violates fundamental fairness. Defendant does nothing more than cite a 2009 report by the National Academy of Sciences that, according to Defendant, concluded that "the uncertainties associated with bloodstain pattern analysis are enormous." (Alteration and internal quotation marks omitted.) Defendant does not even provide a summary of Detective Ross's testimony, comprising more than 150 pages of trial transcripts, much less identify with specificity those aspects of Detective Ross's blood-spatter testimony that he contends should cause us to have grave doubts about the validity of the verdict. The State's answer brief helpfully provides the following summary of Detective Ross's testimony:

> [Detective Ross] spoke very generally about the pattern types of blood spatter. Specifically regarding this case, he opined that the blood showed 'a lot of struggle and a lot of movement in the kitchen.' He analyzed blood stains on a liquor bottle and surmised that it had been used as a club.
>
> . . . .
>
> [Detective Ross] limited his opinions. He said nothing about the number of people involved in the attack or who struck the different

19

blows to [V]ictim. He was very clear in what he could not tell the jury. He did not know where the blood was coming from on [V]ictim's body; he did not know the sequence of the blows to [V]ictim; and he did not know how long the altercation had lasted.

(Citations omitted.) Defendant does not challenge this summary of Detective Ross's testimony and, critically, offers no argument or authority to support his *ipse dixit* assertions that admission of the testimony constituted error. We, therefore, decline to consider this issue any further, concluding that no error was committed by allowing Detective Ross to testify as he did. *See State v. Clifford*, 1994-NMSC-048, ¶ 19, 117 N.M. 508, 873 P.2d 254 ("We remind counsel that we are not required to do their research[.] . . . When a criminal conviction is being challenged, counsel should properly present [the appellate] court with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice and is in violation of our rules of appellate procedure.").

## V.   Defendant's Claim of Ineffective Assistance of Counsel Should Be Brought Through a Habeas Corpus Petition

**{27}**     Defendant lastly argues that he received ineffective assistance of counsel. New Mexico appellate courts prefer that ineffective assistance of counsel claims be adjudicated in habeas corpus proceedings rather than on direct appeal, particularly where the district court has not considered the claim and the record fails to contain sufficient facts necessary to a determination of the issue. *See State v. Castro*, 2017-NMSC-027, ¶¶ 34-37, 402 P.3d 688 (reversing this Court's decision remanding the

defendant's ineffective assistance claim to the district court for an evidentiary hearing where the defendant had failed to establish a prima facie case of ineffective assistance and reserving the defendant's right to file a habeas petition); *State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494 ("Habeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims[.]" (alteration, internal quotation marks, and citation omitted)); *State v. Morgan*, 2016-NMCA-089, ¶ 17, 382 P.3d 981 (noting that "[i]f facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition" (internal quotation marks and citation omitted)). Having already spilled too much ink in this opinion related to Defendant's failure to develop the points of appeal he raises, we simply note that the record before us fails to contain facts necessary to a full determination of this issue. Therefore, we conclude that the proper avenue for Defendant to bring his ineffective assistance claim is a petition for habeas corpus.

**CONCLUSION**

{28}     For the foregoing reasons, we affirm Defendant's convictions.

{29}     **IT IS SO ORDERED.**


_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**

21

_____
**LINDA M. VANZI, Chief Judge**


_____
**KRISTINA BOGARDUS, Judge**