2008-NMSC-036

187 P.3d 170

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Mario RUDOLFO, Defendant–Appellant.**

No. 29,622.

Supreme Court of New Mexico.

June 5, 2008.

John Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Albuquerque, NM, for Appellant.

Gary King, Attorney General, Andrew S. Montgomery, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

DANIELS, Justice.

{1} This is a companion case to *State v. Gonzales*, 2007–NMSC–059, 143 N.M. 25, 172 P.3d 162, in which this court upheld convictions of first-degree murder and other offenses as to codefendant Jacob Gonzales, brother of Appellant Mario Rudolfo. In their joint trial, Rudolfo was convicted of first-degree murder, attempted first-degree murder, shooting at a motor vehicle resulting in great bodily harm, and tampering with evidence.

{2} Rudolfo raises four arguments in this direct appeal: (1) that his convictions for both the felony of shooting at a motor vehicle resulting in great bodily harm and first-degree murder based on that same predicate felony constituted double jeopardy; (2) that the district court erroneously refused a requested self-defense instruction; (3) that there was insufficient evidence to support his conviction for tampering with evidence; and (4) that the district court improperly limited his good time credit under the Earned Meritorious Deductions Act (EMDA), NMSA 1978, Section 33–2–34 (1999).

{3} We affirm the convictions for first-degree murder, attempted first-degree mur-

der, and tampering with evidence; reverse the conviction for shooting at a motor vehicle resulting in great bodily harm; and remand for resentencing in accordance with the EMDA. We also take this opportunity to clarify the meaning of the often-confusing term "slight evidence" that has been used historically by this and other courts when discussing the appropriate test for sufficiency of evidence to support the giving of self-defense and other jury instructions. We will avoid uncertainty in future applications of this test by permanently retiring the phrase "slight evidence."

## I. BACKGROUND

{4} On a tragically violent Thanksgiving Day in 2001, Rudolfo and his brother, Jacob Gonzales, were involved in a fatal altercation with family members of Sara Montour, Gonzales's girlfriend. Sara shared a Valencia County trailer home with Gonzales. *Gonzales*, 2007–NMSC–059, ¶ 2, 143 N.M. 25, 172 P.3d 162. After an emotional argument with Gonzales that day, Sara left the trailer and went to her parents' house. *Id.* She asked some of her family members to go back with her and help retrieve her belongings. *Id.* The family members who accompanied her in a separate van to Gonzales's trailer home that evening included Sara's father, Angelo Montour; her mother, Darlene Montour; her brother, Eli Montour; and Eli's girlfriend, Pamela Martinez. *Id.*

{5} Upon arriving, Angelo and Eli Montour went inside while Darlene Montour and Pamela Martinez waited in the family van. *Id.* Inside the trailer, a fight broke out among Angelo and Eli Montour, Jacob Gonzales and Mario Rudolfo. *Id.* ¶ 3. There were disputes about all the circumstances of the affray, but it was clear that Angelo Montour and Rudolfo were involved in a struggle for Rudolfo's assault rifle and that the rifle discharged inside the trailer. *Id.* The landlord who lived next door, Randy Miller, testified that he heard a gunshot and ran over to the trailer, where he tried to break up the fight. Angelo and Eli Montour hurriedly left the trailer, jumped in their van, and started driving away. *Id.* Inside the trailer, the landlord continued to struggle with Rudolfo

for the rifle, while Gonzales ordered him at gunpoint to let it go. Rudolfo was able to wrestle his rifle away from the landlord, and he ran after the fleeing Montours. The landlord testified that he attempted to prevent Rudolfo from running out of the trailer with the rifle, but had to give up after Gonzales began pistol-whipping him from behind.

{6} Once they were free from the landlord, Rudolfo ran outside with the assault rifle, and Gonzales ran behind him with the pistol. As the Montour family headed down the driveway toward the roadway and slowed to pick up Darlene, Rudolfo and Gonzales fired multiple gunshots into the departing van, striking three of the occupants. Angelo and Eli Montour survived their serious gunshot wounds, but Pamela Martinez died from a shot to the back of her head.

{7} After the shootings, Rudolfo ran to a truck with the assault rifle, so he could go after the Montour van and, in his own words, "kill them all" and "finish them off." He and Gonzales instead fled the scene with the weapons when they heard the police coming. The two were jointly apprehended at a traffic stop the next evening in Albuquerque, despite their efforts to conceal their identities from the police. A search of the car in which they were riding resulted in the discovery of the assault rifle and a magazine of hollow-point ammunition in the trunk and a loaded pistol under the seat.

## II. DISCUSSION

### A. Double Jeopardy

{8} The jury's general verdict finding Rudolfo guilty of the first-degree murder of Pamela Martinez did not indicate whether it was based on a willful and deliberate murder theory or on the alternatively-pled felony murder theory, which incorporated as an essential element the predicate felony of shooting at a motor vehicle resulting in great bodily harm. Rudolfo argues that his separate convictions for both murder and shooting at a motor vehicle constituted double jeopardy. This Court recently recognized the validity of this argument in his brother's appeal, and there is nothing in either the facts or the law that would give rise to a

principled distinction between the two cases with respect to this issue. *See Gonzales,* 2007–NMSC–059, ¶¶ 5–12, 143 N.M. 25, 172 P.3d 162.

{9} The double jeopardy clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see also* N.M. Const. art. II, § 15 (providing for double jeopardy protection). The clause is applicable to the States through the due process clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). "Among its protections, the double jeopardy clause protects a defendant against multiple punishments for the same offense." *Gonzales,* 2007–NMSC–059, ¶ 11, 143 N.M. 25, 172 P.3d 162. If a defendant is charged with violations of multiple statutes for the same offense (a "double description" case), we must then determine if the Legislature intended to create separately punishable offenses or only one. *Id.* "We review Defendant's double jeopardy claim de novo." *Id.* ¶ 5.

{10} In *Gonzales,* Rudolfo's codefendant brother also was charged with first-degree murder based on willful and deliberate murder or, in the alternative, felony murder based on the predicate felony of shooting at a motor vehicle resulting in great bodily harm. *See Gonzales,* 2007–NMSC–059, ¶ 4, 143 N.M. 25, 172 P.3d 162. The jury returned a verdict of guilty of shooting at a motor vehicle resulting in great bodily harm and a general verdict of guilty of first-degree murder, without indicating which alternative theory the jury relied on. *Id.; see id.* ¶ 6 ("A jury can return a first-degree murder conviction even if the jurors do not agree on the underlying theory." (citing *State v. Salazar,* 1997–NMSC–044, ¶ 32, 123 N.M. 778, 945 P.2d 996)). Because Gonzales raised a double jeopardy issue regarding a general verdict, this Court must "examine whether either of the alternative theories of first-degree murder would subject Defendant to double jeopardy." *Gonzales,* 2007–NMSC–059, ¶ 10, 143 N.M. 25, 172 P.3d 162.

{11} In felony murder cases, the predicate felony is a lesser included offense and is always subsumed into the felony murder conviction; thus, a separate conviction for the same predicate felony would constitute double jeopardy. *Gonzales,* 2007–NMSC–059, ¶ 11, 143 N.M. 25, 172 P.3d 162. In *Gonzales,* we vacated the defendant's predicate felony conviction of shooting at a motor vehicle because the alternative theory of first-degree felony murder subjected him to double jeopardy. *Gonzales,* 2007–NMSC–059, ¶ 12, 143 N.M. 25, 172 P.3d 162.

{12} This case requires the same result, as the State has expressly conceded. We therefore vacate the separate conviction for shooting at a motor vehicle resulting in great bodily harm.

**B. Refused Self–Defense Instruction**

{13} Rudolfo urges reversal of his convictions for the murder of Pamela Martinez and the attempted murder of Angelo Montour on the ground that the district court erroneously determined that the evidence was insufficient to justify instructing the jury on his right of self-defense. Our standard of review is de novo. *State v. Gaines,* 2001–NMSC–036, ¶ 4, 131 N.M. 347, 36 P.3d 438.

{14} Rudolfo argues that his self-defense position is both procedurally and factually distinguishable from the arguments of his brother that we recently rejected in *Gonzales.*

{15} We first address Rudolfo's procedural distinction, that proposed self-defense instructions were actually tendered by Rudolfo's counsel and rejected by the district judge, while counsel for Gonzales declined any self-defense instructions. In *Gonzales,* however, we chose to address the self-defense issues on the merits. We held explicitly that the evidence was insufficient to warrant the instructions. *Gonzales,* 2007–NMSC–059, ¶ 18, 143 N.M. 25, 172 P.3d 162.

{16} This case arises from the same events that occurred in *Gonzales.* The facts relating to self-defense in the two cases are not materially distinguishable.

{17} A defendant is not entitled to a self-defense instruction unless it is justified

by sufficient evidence on every element of self-defense. Those elements are that "(1) the defendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the killing resulted from that fear, and (3) the defendant acted reasonably when he or she killed." *Id.* ¶ 20 (quoted authority omitted). "The first two requirements, the appearance of immediate danger and actual fear, are subjective in that they focus on the perception of the defendant at the time of the incident. By contrast, the third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant." *State v. Coffin,* 1999–NMSC–038, ¶ 15, 128 N.M. 192, 991 P.2d 477.

{18} None of the three required components of self-defense are present in Rudolfo's case, just as they were not present in his brother's case. Rudolfo's argument that he had been overpowered, injured, and frightened in the fight inside the trailer, creating an apprehension of immediate death or great bodily harm, does not address whether such a threat existed when he ran outside and shot at the fleeing van. It is important to view the circumstances at the time the deadly force was used by the defendant and not at some earlier point. As this Court stated in *Gonzales,* "the victims were shot while they were in their van, driving away from Defendant's trailer. If at any point Defendant was put in fear by an appearance of immediate death or great bodily harm, that fear could not have been present when the victims were fleeing in their van." *Gonzales,* 2007–NMSC–059, ¶ 22, 143 N.M. 25, 172 P.3d 162.

{19} Rudolfo's own statements underscore this analysis. He did not testify or offer any other defense evidence, but during the prosecution's case the jury heard an audiotaped telephone interview he gave to a television station while he was hiding from the police. In addition to discussing the fight inside the trailer before the Montours fled, the interview contained Rudolfo's explanation for shooting at the van:

INTERVIEWER: If they're in a van driving away, why did you decide to shoot at the van?

MARIO RUDOLFO: Because my face was swollen, my finger's broken, everything—I'm all fucked up.

While Rudolfo's emotional condition might have been argued to support a jury's reduction of the crime from first-degree murder to a lesser homicide offense, a reduction sought by Rudolfo but rejected by his jury, his anger and emotional turmoil simply did not equate to a fear of immediate bodily harm at the time he shot at the people in the departing van.

 {20} Even more significant than the lack of evidentiary support for any subjective fear of imminent death or great bodily harm, these circumstances do not meet the separate objective reasonableness standard. The law simply does not recognize any right to an acquittal based on a wholly unreasonable claim of a self-defense justification for taking the life of another. "Homicide is justifiable if the killer acted reasonably in self-defense." *State v. Sutphin,* 2007–NMSC–045, ¶ 22, 142 N.M. 191, 164 P.3d 72 (quoted authority omitted). If a court determines that a reasonable jury must find the defendant's use of deadly force to be unreasonable under the circumstances, a self-defense instruction is not appropriate. *Id.* "The purpose of recognizing self-defense as a complete justification to homicide is the reasonable belief in the necessity for the use of deadly force to repel an attack in order to save oneself or another from death or great bodily harm." *Coffin,* 1999–NMSC–038, ¶ 12, 128 N.M. 192, 991 P.2d 477; *see also State v. Reneau,* 111 N.M. 217, 219, 804 P.2d 408, 410 (Ct.App.1990) ("The inquiry in a self-defense claim focuses on the reasonableness of defendant's belief as to the apparent necessity for the force used to repel an attack."). "Because self-defense is defined by the objectively reasonable necessity of the action, the defense obviously does not extend to a defendant's acts of retaliation for another's involvement in a crime against him or her." *Coffin,* 1999–NMSC–038, ¶ 12, 128 N.M. 192, 991 P.2d 477; *see also State v. Pruett,* 24 N.M. 68, 73, 172 P. 1044, 1046 (1918) ("[T]he law of self-defense does not imply the right to attack, nor will it permit acts done in retaliation for revenge....").

{21} On appeal, Rudolfo points to the difficulty the trial judge expressed in deciding whether to grant the requested self-defense instruction as confirmation that there was the kind of "slight evidence" that would justify a jury's consideration of an acquittal based on self-defense. While we could dispose of this argument by merely stating the obvious, that the care and concern a judge expresses in determining which side of the line a situation falls on is not an indication that the judge made the wrong decision, we have determined that we should take this opportunity to resolve the continuing confusion that has been occasioned by the use of the term "slight evidence" in determining whether a jury instruction is appropriate.

{22} Courts have historically used "slight evidence" and similar terminology in reminding trial courts of the need to respect the central role of the jury as the constitutionally-mandated factfinder in criminal cases. This Court has been consistent in its use of the "slight evidence" language. *See, e.g., State v. Lopez,* 2000–NMSC–003, ¶ 23, 128 N.M. 410, 993 P.2d 727 ("[A]n instruction on a claim of self defense or defense of another should be given if there is any evidence, even slight evidence, to support the claim" (quoted authority omitted)); *State v. Heisler,* 58 N.M. 446, 455, 272 P.2d 660, 666 (1954) ("[W]here self-defense is involved in a criminal case and there is any evidence, although slight, to establish the [defense], it is not only proper for the court, but its duty as well, to instruct the jury fully and clearly. . . .")

{23} Courts in other jurisdictions use varying terminology, but the fundamental concept expressed in case law throughout the United States is to the same effect, that the courts should not usurp the role of the jury in determining credibility and otherwise weighing the evidence. *See, e.g., United States v. Al–Rekabi,* 454 F.3d 1113, 1121 (10th Cir. 2006) ("some evidence"); *Marquardt v. State,* 164 Md.App. 95, 882 A.2d 900, 921 (Ct. Spec.App.2005) ("some evidence"); *State v. Vassar,* 154 N.H. 370, 910 A.2d 1193, 1195 (2006) ("more than a minutia or scintilla of evidence"); *Cherrix v. Commonwealth,* 257 Va. 292, 513 S.E.2d 642, 652 (1999) ("more than a scintilla of evidence"); *People v. Hef-*

*lin,* 434 Mich. 482, 456 N.W.2d 10, 19 (1990) (more than "a modicum of evidence"); *United States v. Elso,* 422 F.3d 1305, 1308 (11th Cir.2005) ("some basis in the evidence"); *People v. Uptain,* 352 Ill.App.3d 643, 287 Ill.Dec. 830, 816 N.E.2d 797, 799 (2004) ("some foundation for the instruction in the evidence"); *United States v. Martinelli,* 454 F.3d 1300, 1315 (11th Cir.2006) ("*any foundation* in the evidence"); *State v. Gomez,* 211 Ariz. 494, 123 P.3d 1131, 1138 (2005) ("any theory reasonably supported by evidence"); *United States v. Parker,* 364 F.3d 934, 945 (8th Cir.2004) ("an adequate factual basis"); *Commonwealth v. Tirado,* 65 Mass.App.Ct. 571, 842 N.E.2d 980, 983 (2006) ("if any view of the evidence would support a reasonable doubt").

{24} While "slight evidence," "some evidence," and similar minimizing terms serve a salutary purpose in cautioning judges not to assume the role of the factfinder when deciding whether to submit an issue to the jury, those terms can create confusion in determining when a self-defense instruction or other issue must be submitted. Appellate judges often find it necessary to follow the use of the terms with immediate explanations that those cautionary terms mean that there does not have to be more than minimally sufficient evidence to support a lawful decision of the jury, as this Court recently did in Rudolfo's brother's case:

> Whenever there is even the slightest evidence that the defendant killed in self-defense, the instruction should be given. *State v. Sutphin,* 2007–NMSC–045, ¶ 22, 142 N.M. 191, 164 P.3d 72. However, the evidence must be sufficient to allow reasonable minds to differ as to all elements of the offense. *State v. Lopez,* 2000–NMSC–003, ¶ 23, 128 N.M. 410, 993 P.2d 727 (citation and quotation marks omitted).

*Gonzales,* 2007–NMSC–059, ¶ 19, 143 N.M. 25, 172 P.3d 162; *see also State v. Gallegos,* 2001–NMCA–021, ¶ 9, 130 N.M. 221, 22 P.3d 689 ("[T]he defendant must introduce evidence that will raise in the minds of the jurors a reasonable doubt that the killing was not justified by self-defense or by defense of another."); *Heisler,* 58 N.M. at 456, 272 P.2d at 666 ("[T]he evidence may not be so slight

as to be incapable of raising a reasonable doubt in the jury's mind on whether a defendant accused of a homicide did act in self-defense."). Regardless of the minimizing term used by a court, that same kind of cautionary explanation often must be added to clarify that the evidence does have to be sufficient to support a reasonable jury determination of the issue at hand. *See, e.g., Al–Rekabi,* 454 F.3d at 1121–22 (qualifying "some evidence" as "evidence [on] each element sufficient to warrant its consideration by the jury"); *State v. Haycock,* 146 N.H. 5, 766 A.2d 720, 724 (2006) (stating that "some evidence" must be "more than a minutia or scintilla of evidence" and must be sufficient to support a "rational finding" in favor of the defense (quoted authority omitted)).

{25} The confusion generated by these minimizing terms was an obvious factor in the trial court's expressed uncertainty in determining whether to grant the requested self-defense instruction in this case. The judge did not feel there was enough evidence of an imminent danger to Rudolfo at the time of the killing to support a reasonable doubt in a juror's mind, but she was concerned that, under our case law, the existence of any degree of "slight evidence" might require the instruction to be submitted.

{26} Ultimately, the trial court refused the instruction, a decision that we agree was proper. We conclude that, in the circumstances of this case, reasonable jurors could not have believed that Rudolfo actually thought it necessary to fire at the occupants of the fleeing van in order to protect himself from an imminent threat of death or great bodily harm, and there was no basis for the jury to have any doubt that a reasonable person would have found the shooting to be unnecessary. We therefore must reject Rudolfo's argument that the district court erroneously denied his requested self-defense jury instructions.

{27} We have also determined that we should permanently retire further use of the "slight evidence" term. Its utility in stressing that trial judges should not usurp the function of the jury in deciding whether the evidence is sufficient to support a reasonable doubt is outweighed by the confusion it has generated. If appellate courts find it necessary to continue cautioning trial courts that "slight evidence" means more than any trace of evidence, it is preferable simply to use the ultimate definition, replacing references to "slight evidence" with "evidence sufficient to justify a reasonable jury determination" as to whatever element is under consideration. For a defendant to be entitled to a self-defense instruction, for example, there need be only enough evidence to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted in self-defense. *State v. Parish,* 118 N.M. 39, 44, 878 P.2d 988, 993 (1994). If any reasonable minds could differ, the instruction should be given. In this case, as we did in *Gonzales,* we have concluded that reasonable minds could not have differed. We therefore affirm Rudolfo's convictions for murder and attempted murder.

## C. Tampering With Evidence

{28} Rudolfo challenges the sufficiency of the evidence to support the jury's verdict finding him guilty of tampering with evidence by hiding "a gun" with intent to prevent his apprehension, conviction or prosecution, in violation of NMSA 1978, Section 30–22–5 (1963). The State argues that the jury had sufficient evidence to find from the circumstances that Rudolfo intended to conceal one or both of the weapons that had been used in the crimes. The State points to the evidence that the guns were removed from the scene by Rudolfo and his brother and placed out of view under the front seat and in the closed trunk of the car in which they were apprehended, as well as the fact that Rudolfo and his brother both falsified their identities when the car was stopped. The jury could therefore have concluded that the Defendants were trying to hide both their identities and the weapons from the police.

{29} The standard of review for sufficiency of the evidence "is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Sutphin,* 107 N.M. at 131, 753 P.2d at 1319

(1988). We review the evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000–NMSC–009, ¶ 26, 128 N.M. 711, 998 P.2d 176. The question before us as a reviewing Court is not whether we would have had a reasonable doubt but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise.

{30} Although the evidence was susceptible to different interpretations, it was sufficient to support a finding of an intent to conceal the guns. After shooting into the Montour van, Rudolfo and his brother fled the scene of the crime with the weapons they had used. Rudolfo told a television reporter in a phone interview the next morning that he was going to hide indefinitely, that he had left town, that he was leaving the State, that the authorities would never find him, and that he was not going to have to face up to what he had done. Hours after that interview, however, the police apprehended both Rudolfo and his brother in the course of a routine traffic stop in Albuquerque, despite their falsely representing their true identities. The weapons were not in plain view in the car, but a post-arrest search of the car revealed a rifle and magazine of ammunition in the closed trunk and a loaded handgun placed under the seat.

{31} Guided by the essential elements in the court's instructions, the jury necessarily found beyond a reasonable doubt that: (1) Rudolfo "hid a gun," (2) he "intended to prevent the apprehension, prosecution or conviction of himself," and (3) "[t]his happened in New Mexico on or about the 22nd day of November, 2001." *See* NMSA 1978, § 30–22–5(A) ("Tampering with evidence consists of destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another."). "[I]n order for Defendant's conviction on tampering with evidence to be upheld, there must be sufficient evidence from which the jury can infer: (1) the specific intent of the Defendant to disrupt the

police investigation; and (2) that Defendant actively 'destroyed or hid physical evidence.' " *State v. Duran*, 2006–NMSC–035, ¶ 14, 140 N.M. 94, 140 P.3d 515. Intent can be inferred from an overt act or the conduct of a defendant. *Id.; see also State v. Roybal*, 115 N.M. 27, 34, 846 P.2d 333, 340 (Ct.App. 1992) (concluding that a conviction for tampering must be supported by sufficient evidence either of intent to thwart an investigation or of an act listed in the statute).

{32} The evidence that Rudolfo fled the scene with the weapons used in the crimes, attempted to flee New Mexico, falsely identified himself to police officers, and concealed the weapons in his car was sufficient to support a reasonable finding that he realized an official investigation would occur and that he wanted to keep the weapons from being located. We therefore affirm the conviction of tampering with evidence.

## D. Earned Meritorious Deductions Act

{33} The Judgment, Sentence and Commitment imposed sentences of (1) life imprisonment for the first-degree murder conviction; (2) nine years for the attempted first-degree murder conviction; (3) nine years for the shooting at a motor vehicle resulting in great bodily harm conviction; and (4) eighteen months for the tampering with evidence conviction. The judgment then ordered that those separate sentences were to be served consecutively, for a stated total of life imprisonment plus 19½ years. Neither party has raised any issue as to any of those sentencing computations.

{34} The judgment went further, however, and provided in paragraph 6: "Defendant must serve eighty-five percent (85%) of the above sentence pursuant to Section 33–2–34(L)(4)." Both Rudolfo and the State have taken issue on appeal with this provision, and although each party has a different focus, they find common ground in the position that paragraph 6 contravenes the EMDA. We agree.

{35} In the EMDA, the Legislature has established a detailed set of guidelines for both the courts and the corrections department to administer in the ultimate determi-

nation of a prisoner's eligibility for good time reductions from his period of confinement. Two categories of the guidelines are relevant to this appeal. The first relates to the differing limits on the good time that may be awarded for various types of offenses of conviction, and the second relates to the respective roles of the judiciary and the executive in administering the various guidelines.

{36} With respect to the offense-related guidelines that are relevant to this appeal, the Legislature has defined in the EMDA three separate categories of offenses: those involving sentences of life imprisonment or death, for which no good time at all may be awarded, Section 33–2–34(G); those involving "serious violent offenses" defined in Section 33–2–34(L)(4), for which no more than four days per month may be awarded, Section 33–2–34(A)(1); and all other offenses, defined as "nonviolent offenses" in Section 33–2–34(L)(3), for which up to thirty days per month may be awarded, Section 33–2–34(A)(2). There is no provision in the EMDA or any other New Mexico statute that requires a prisoner to serve 85% of any sentence, although the EMDA's four days per month limit on good time awards relating to serious violent offenses results in a prisoner having to serve between 86.85% and 100% of his stated sentence.

{37} To administer the EMDA, the Legislature has assigned different functions to the judicial and executive branches. The sentencing court has a limited role in determining which offenses are to be considered "serious violent offenses" for good time purposes. As to the fourteen crimes identified in Sections 33–2–34(L)(4)(a)–(n), the sentencing court has no discretion whatsoever: they are always categorized as "serious violent offenses" and subject to the four. day per month cap on good time eligibility. In Section 33–2–34(L)(4)(*o*), the EMDA identifies thirteen other crimes and requires the sentencing court to exercise its discretion to determine whether the nature of the offense and the resulting harm in a particular factual context justify categorizing the offense as a serious violent offense. *See State v. Scurry*, 2007–NMCA–064, ¶ 1, 141 N.M. 591, 158 P.3d 1034. The courts have no further role in the administration of the EMDA or in determining the amount of good time that may be earned as to any convicted offense. The remaining computations are assigned to the corrections department by the comprehensive statutory scheme set out in the EMDA and should not be addressed further by the court in the judgment or otherwise.

{38} The four day per month formula for serious violent offenses, moreover, would not apply to any of the offenses in this case. None of the convictions in this case, aside from the vacated shooting at a motor vehicle conviction, are for any of the offenses specifically set forth in Section 33–2–34(L)(4), and there was thus no EMDA role for the sentencing court to perform. The offenses of attempted first-degree murder and tampering with evidence, not being defined as the kinds of offenses for which good time eligibility is limited to a maximum of four days per month or prohibited entirely, are offenses for which up to thirty days per month may be awarded by the corrections department, pursuant to Section 33–2–34(A)(2). The offense of first-degree murder is not only conspicuously missing from the offenses that can be considered "serious violent offenses," it is specifically dealt with in Section 33–2–34(G), which precludes the award of any good time whatsoever for offenses carrying sentences of death or life imprisonment.

{39} Because there was no role for the court to perform in this case with respect to good time eligibility, paragraph 6 of the Judgment, Sentence and Commitment should be stricken in its entirety.

## III. CONCLUSION

{40} We vacate Rudolfo's conviction for shooting at a motor vehicle resulting in great bodily harm. We remand for dismissal of that count and for the district court to strike the language in paragraph 6 of the judgment relating to computation of good time credit. We affirm Rudolfo's convictions for first-degree murder, attempted first-degree murder and tampering with evidence.

{41} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES and RICHARD C. BOSSON, Justices.