This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                            **NO. 34,613**

**CHAVEZ CHARLES MARTIN, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Gary C. Mitchell, P.C.
Gary C. Mitchell
Ruidoso, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

{1}     Defendant Chavez Charles Martin, Jr. appeals from his conviction for second degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994). Defendant's sole argument on appeal is that the district court erred in refusing to instruct the jury on his claim of self-defense. Because reasonable minds could differ as to whether Defendant acted in self-defense under the circumstances, we reverse Defendant's conviction and remand for a new trial.

**BACKGROUND**

{2}     April 15, 2013 began uneventfully for all involved in this case. Anthony Norberto (Victim), Darlena Upshaw, and Defendant all spent the night at Victim's house and awoke there in the morning. Defendant and Upshaw left the house, driving first to a convenience store and then to the home of Defendant's niece. They then returned to Victim's house, where they remained for the next several hours. Defendant drank alcohol throughout the day. Between 3:00 p.m. and 4:00 p.m., Defendant, Victim, and Upshaw left Victim's house and picked up several other individuals, including Lucita Mason-Archuleta. Upshaw drove the vehicle, a four-door Dodge pickup truck that belonged to Defendant. She did not consume any alcohol so that she could blow into the truck's interlock device. A hunting knife owned by Defendant was in the seat-back pouch behind the front passenger seat.

**{3}** At some point during the late afternoon, the group returned to Victim's house. While there, they talked and watched television. Victim started drinking around dusk and consumed approximately "half a fifth" of liquor. He also smoked both methamphetamine and marijuana with Upshaw during the day.

**{4}** The group again got into the truck and headed toward a nearby apartment complex. Upshaw was driving, and Victim was sitting in the front passenger seat. Defendant was sitting behind Victim in the rear passenger seat. Victim began to discuss childhood memories that involved his father physically abusing his mother. Defendant commented on these memories in a manner that angered Victim. Victim exited the truck and demanded that Defendant get out and fight. Defendant refused, and Victim reentered the truck.

**{5}** After reentering the truck, Victim again became angry at comments made by Defendant and repeatedly hit Defendant while threatening to kill him. Victim then reached for the knife in the seat-back pouch behind the front passenger seat. A struggle for the knife ensued. Defendant gained control of the knife and stabbed Victim multiple times. Victim had one deep incision over the left side of his neck that extended to his right lower back and two stab wounds: one to his left chest and one to his right chest that penetrated his lung and liver. After stabbing Victim, Defendant

exited the truck, discarded the knife, and fled the scene on foot. Victim died from his wounds.

{6}     Officer Roque Velarde of the Farmington Police Department (FPD) located Defendant at a local motel. He transported Defendant to FPD headquarters, where Defendant participated in a videotaped interview with FPD Detective Daven Badoni. Defendant described the events of the evening and repeatedly expressed his fear that Victim was going to hurt him. He described Victim's reputation for violence and tendency to carry a specific weapon. Defendant could not remember stabbing Victim. Defendant also stated that he himself was physically disabled as a result of a car accident.

{7}     At trial, the parties offered conflicting evidence as to the events of the evening. Defendant did not testify, but the jury viewed his videotaped interview with Detective Badoni. The State offered expert witness testimony by Dr. Ian Paul, a forensic pathologist, who agreed with Defendant that the incision extending from Victim's neck was consistent with Defendant's theory that Victim was "coming at" Defendant when the wound was inflicted. Defendant offered expert witness testimony by Teresa Vigil, a forensic scientist, who testified that her fingerprint analysis of the knife revealed a palm print on the blade that did not belong to Defendant. Dr. Paul

4

additionally testified that Victim had a blood-alcohol content of 0.139 and both methamphetamine and marijuana in his system.

**{8}** Upshaw testified that Victim's temperament invoked fear in others and that Victim had a criminal history for violent acts. Both Upshaw and Victim's brother testified that Victim would not let go of perceived slights. To the contrary, Defendant's niece testified that Defendant was a kind and peaceful person.

**{9}** The district court refused Defendant's requested self-defense instruction. The jury deliberated for approximately two hours before finding Defendant guilty of second degree murder. This appeal resulted.

**STANDARD OF REVIEW**

**{10}** Whether a district court erred in denying a requested jury instruction is a mixed question of law and fact that appellate courts review de novo. *State v. Swick*, 2012-NMSC-018, ¶ 60, 279 P.3d 747. "[T]o warrant jury instructions on self-defense, evidence must be sufficient to allow reasonable minds to differ regarding all elements of the defense." *Id.* Those elements are whether "(1) the defendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the killing resulted from that fear, and (3) the defendant acted reasonably when he or she killed." *State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170 (internal quotation marks and citation omitted). "If any reasonable minds could differ, the instruction

5

should be given." *Id.* ¶ 27. "When considering a defendant's requested instructions, [the appellate courts] view the evidence in the light most favorable to the giving of the requested instructions." *Swick*, 2012-NMSC-018, ¶ 60 (alteration, internal quotation marks, and citation omitted).

**DEFENDANT'S ENTITLEMENT TO A SELF-DEFENSE INSTRUCTION**

{11}     This case presents a close call as to whether Defendant was entitled to a self-defense instruction. Courts evaluate the elements of self-defense both subjectively and objectively. *See Rudolfo*, 2008-NMSC-036, ¶ 17 ("The first two requirements, the appearance of immediate danger and actual fear, are subjective in that they focus on the perception of the defendant at the time of the incident. By contrast, the third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant." (internal quotation marks and citation omitted)). In this case, the district court did not rule on the subjective elements. It did, however, conclude that Defendant presented insufficient evidence that a reasonable person would respond with deadly force under the same circumstances. We disagree.

{12}     Numerous appellate cases hold that defendants are not entitled to self-defense instructions if their use of deadly force is objectively unreasonable. *See, e.g.*, *State v. Guerra*, 2012-NMSC-014, ¶ 17, 278 P.3d 1031 (holding that the defendant was not

6

entitled to a self-defense instruction when she repeatedly stabbed an unarmed woman who was lying on the ground); *Rudolfo*, 2008-NMSC-036, ¶¶ 6, 18 (holding that the defendant was not entitled to a self-defense instruction when he shot at the victim while the victim was driving away); *State v. Lopez*, 2000-NMSC-003, ¶¶ 3, 26, 128 N.M. 410, 993 P.2d 727 (holding that the defendant was not entitled to a self-defense instruction when he inflicted more than fifty stab wounds on the victim and crushed his skull with a rock). In *Guerra*, our Supreme Court noted that the defendant was not entitled to a self-defense instruction when "the response . . . was indisputably unreasonable." 2012-NMSC-014, ¶ 18.

{13}     We conclude that Defendant's conduct was not indisputably unreasonable under the circumstances. Inflicting three wounds in close quarters is not analogous to the conduct of the defendants in the cases described above. Instead, this case is more analogous to *State v. Branchal*, 1984-NMCA-063, 101 N.M. 498, 684 P.2d 1163. In *Branchal*, the female defendant and the male victim were in a "stormy" six-year relationship. *Id.* ¶ 1. After a day of heavy drinking, the victim returned home in a belligerent state. *Id.* ¶ 13. While attempting to fix a light, he told the defendant to wake up one of the children to fetch a screwdriver. *Id.* ¶¶ 13-14. The defendant told him to leave the children alone and placed a handgun in the pocket of her housecoat. *Id.* ¶¶ 14-15. The victim invited a friend to the house, and the two drank more alcohol

7

and smoked marijuana. *Id.* ¶ 16. The defendant went to bed with her sister and a baby. *Id.* The victim repeatedly came into the bedroom and disturbed the women. *Id.* ¶ 17. He told the defendant that he had a list of people to kill that included the defendant's child and other family members. *Id.* ¶ 18. The victim went outside and the defendant went to the kitchen and locked the door. *Id.* ¶ 20. She had the gun in her pocket. *Id.* The victim banged on the door and threatened to break it down, so the defendant opened the door. *Id.* ¶ 21. She testified that the victim

> just showed anger and more anger. That's when I figured that if I didn't shoot at him he was either gonna kill me, take the gun away from me or kill one of the kids, or kill me, or something. I just got so scared that I didn't know what to think. I just had to shoot.

*Id.* The defendant shot the victim in the chest. *Id.* ¶ 1. At trial, the defendant attempted to introduce evidence of previous domestic abuse she had suffered at the hands of the victim. *Id.* ¶ 22. The district court refused to admit the evidence but allowed the defendant to make an offer of proof. *Id.* This Court concluded that "the admitted evidence was sufficient to raise an issue of fact with respect to the elements of a self-defense claim." *Id.* ¶ 24. The evidence supporting a self-defense claim was: (1) the victim started the fight; (2) the victim came after the defendant in a threatening way; and (3) the defendant feared for her life. *Id.* We note, for purposes of analogy, that the defendant's fear that the gun could be taken away and used against her was central to her self-defense claim.

{14} Absent the domestic relationship, the present case is not dissimilar. Defendant and Victim were closely acquainted. Defendant was aware that Victim had a reputation for violence and a tendency to carry a weapon on his person. Defendant, to the contrary, had a reputation for being a peaceful person. He was also physically disabled. Both men were drunk, and Victim was high on methamphetamine and marijuana. They were closely confined as passengers in a moving truck. Victim became angry and challenged Defendant to a fight. Defendant refused to fight. Victim then punched Defendant repeatedly in the head from the front passenger seat of the truck and grabbed for the knife that was in the seat-back pouch behind the front passenger seat. After struggling with Victim over the knife, Defendant gained control of the knife and stabbed Victim three times.

{15} Although the evidence of Defendant's subjective fear and the objective reasonableness of his conduct is less clear than in *Branchal*, we "view the evidence in the light most favorable to the giving of the requested instructions." *Swick*, 2012-NMSC-018, ¶ 60 (alteration, internal quotation marks, and citation omitted). The evidence showed that the men struggled over the knife. Regardless of who possessed the knife immediately after the struggle, a reasonable juror could conclude that Defendant's possession of the knife did not mitigate the threat of great bodily harm presented to Defendant by Victim while Defendant remained within the confines of

9

the truck. *See* UJI 14-131 NMRA (defining "great bodily harm" as "an injury to a person which creates a high probability of death" (alteration omitted)). Because a reasonable juror could so conclude, Defendant was entitled to a self-defense instruction. *See Rudolfo*, 2008-NMSC-036, ¶ 27 ("If any reasonable minds could differ, the instruction should be given.").

**CONCLUSION**

{16}    The district court erred in refusing Defendant's requested self-defense instruction. We therefore reverse and remand for a new trial.

{17}    **IT IS SO ORDERED.**


_____
**JAMES J. WECHSLER, Judge**


**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**MICHAEL E. VIGIL, Judge**