

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0556-18

**KARL DEAN STAHMANN, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### COMAL COUNTY

**HERVEY, J., delivered the opinion of the Court in which KEASLER, RICHARDSON, NEWELL, and WALKER, JJ., joined. YEARY, J., filed a dissenting opinion in which KELLER, P.J., and KEEL and SLAUGHTER, JJ., joined.**

### O P I N I O N [1]

Karl Dean Stahmann, Appellant, was involved in an automobile accident, after which he threw a bottle of promethazine, a controlled substance, over a nearby wire fence before law enforcement arrived. The bottle landed two to three feet past the fence in plain view. He was convicted of third-degree felony tampering with physical evidence and was

---

[1]This appeal was transferred from the Austin Court of Appeals. *Stahmann v. State*, 548 S.W.3d 46, 51 (Tex. App.—Corpus Christi 2018).

sentenced to 10 years' confinement and fined $5,000. The judge suspended his sentence and placed him on community supervision for 10 years. Stahmann appealed, arguing in part that the evidence was insufficient to prove that he destroyed, altered, or concealed the prescription bottle. The court of appeals agreed that the evidence was insufficient, but instead of rendering an acquittal, it reformed the judgment to show that Stahmann was convicted of the lesser-included offense of attempted tampering with physical evidence, a state-jail felony.

We will affirm the judgment of the court of appeals.

## FACTS[2]

Around 4:30 p.m. or 5:00 p.m. on July 1, 2012, Noberto Gonzalez was driving with his family from New Braunfels towards Marble Falls on Highway 46 near Canyon Lake when he was involved in an automobile accident. Stahmann was driving in the opposite direction when he stopped to turn left across the highway into a gated community. As Stahmann turned left, Gonzalez's SUV broadsided Stahmann's van. Gonzalez said that Stahmann appeared to be looking down and did not notice his approaching SUV. There is no dispute that Stahmann did not use his turn signal or that he did not yield the right of way.

Ronnie Ballard and Michael Freeman, two bystanders, were driving home together when they happened upon the car accident and stopped to render aid. Ballard and

---

[2]We focus on only the facts necessary to resolve this case. The court of appeals recited the facts in detail. *Stahmann v. State*, 548 S.W.3d 46, 51–53 (Tex. App.—Corpus Christi 2018).

Freeman were the first to approach Stahmann's van. As they neared the van, Stahmann exited through the driver's-side door. When Ballard and Freeman reached the van and began checking on Stahmann's unconscious passenger, they noticed that Stahmann had walked in front of the van, near a wire game fence meant to keep animals inside the property, and threw something over it.[3]

Ballard testified that Stahmann "walked towards the fence that was -- there was a gated fence right near the accident scene. At that time, I saw him throw something over the -- over the fence into -- near a tree at the bottom of that tree. It looks like -- looked to be, like, a prescription medicine bottle." According to Freeman, he was not far from Stahmann when Stahmann threw the bottle, and Freeman saw the bottle "land[] right there next to -- to the fence, maybe a couple of feet away." He said that it landed "plain as day right there in the -- he tried to throw it in the bush, but it didn't make it." (The bottle was close enough that one officer attempted to retrieve it through the fence with his asp, a short, expandable baton.) Both Ballard and Freeman said that they never lost sight of the pill bottle. When the first officer arrived on-scene, Comal County Deputy Chris Koepp, Ballard and Freeman told Koepp about the bottle and pointed it out to him. Koepp said that he could see the bottle "very clearly." When asked by the State whether the bottle was concealed, he said that it was, but on cross-examination, and after his memory was refreshed with his own prior testimony, he agreed that the pill bottle was in plain view on

---

[3]Ballard agreed with the defense's characterization that the fence was a wire game fence meant to keep cows, horses, or exotic game inside the property.

top of the grass.

## PROCEDURAL HISTORY

The jury was charged on the offense of tampering with physical evidence and attempted tampering with physical evidence. It found Stahmann guilty of the greater offense, fined him $5,000, and sentenced him to 10 years' confinement. The sentence was suspended, however, and Stahmann was placed on community supervision for 10 years.

## INDICTMENT

In two counts, the State alleged that,

> [O]n or about the 1st day of July, 2012, KARL DEAN STAHMANN, hereinafter styled Defendant, knowing that an investigation was pending or in progress, did then and there alter, destroy or conceal a thing, to-wit: a bottle of pills, with intent to impair its verity or availability as evidence in the investigation.

*    *    *

> [O]n or about the 1st day of July, 2012, KARL DEAN STAHMANN, hereinafter styled Defendant, knowing that an offense had been committed, did then and there alter, destroy or conceal a thing, to-wit: a bottle of pills, with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to said offense.

The State had to prove either that (1) knowing that an investigation or official proceeding was pending or in progress, (2) Stahmann altered, destroyed, or concealed a bottle of pills, (3) with the intent to impair its verity or availability as evidence in the investigation or official proceeding; *or that* (1) knowing that an offense was committed, (2) he altered, destroyed, or concealed a bottle of pills, (3) with the intent to impair its

verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense. *Stahmann v. State*, 548 S.W.3d 46, 53 (Tex. App.—Corpus Christi 2018).

## APPLICABLE LAW

### a. Sufficiency of the Evidence

Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted. *Id.* The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses. *Id.* Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial. *Id.*; *see Hooper*, 214 S.W.3d at 16–17. Conclusions reached by speculation are insufficiently supported by the evidence to support a finding of guilt beyond a reasonable doubt. *Hooper*, 214 S.W.3d at 16. When the jury could reasonably draw conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326. When the jury charge authorizes conviction on multiple theories of liability, we will sustain the conviction if the evidence is sufficient to prove any of the theories submitted in the jury charge. *Campbell v. State*, 426 S.W.3d 780, 786 (Tex. Crim. App. 2014).

### b. Statutory Construction

Statutory construction is a question of law we review de novo. *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011). When interpreting the language of a statute, we read words and phrases in context and construe them according to normal rules of grammar and usage. *Id.* We give effect to each word, phrase, clause, and sentence when reasonably possible. *Id.* (citing *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008); *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)). If the language of the statute is plain, we effectuate that plain language so long as doing so does not lead to absurd results. If the language is ambiguous or effectuating it would lead to absurd results, we can review a variety of extra-textual resources to determine its meaning. *Id.*; *see* TEX. GOV'T CODE § 311.023.

### c. The Statute

The tampering-with-physical-evidence statute, Section 37.09 of the Penal Code, states in relevant part that,

> (a) A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he:
>
>> (1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding; or
>
> *   *   *
>
> (d) A person commits an offense if the person:
>
>> (1) knowing that an offense has been committed, alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of

or official proceeding related to the offense; or

\* \* \*

TEX. PENAL CODE § 37.09(a)(1), (d)(1).

Our tampering-with-physical-evidence statute is derived from the Model Penal Code.[4] Many states, like Texas, have adopted slightly different versions of the statute.[5] For example, while the Texas statute refers only to "altering, destroying, or concealing," the Model Penal Code and other states have specified that a person is also guilty if he "removes" any record, document, or thing.[6] Some states have included novel theories of

---

[4]In relevant part, Article 241.7 of the Model Penal Code states that,

A person commits a misdemeanor if, believing that an official proceeding or investigation is pending or about to be instituted, he:

(1) alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding or investigation; or

\* \* \*

*See* MODEL PENAL CODE § 241.7 (1962).

[5]MODEL PENAL CODE § 241.7 (1962).

[6]*See, e.g.*, FLA. STAT. § 918.13; NEB. REV. STAT. § 28-922; 18 PA. CONS. STAT. § 4910; UTAH CODE § 76-8-510.5.

tampering, such as when a defendant moves,[7] suppresses,[8] mutilates, hides,[9] places,[10] or disguises physical evidence.[11]

The Kentucky Supreme Court, interpreting the word "remove," said that it means "the act of changing the location or position of a piece of an object in a way that moves it from the scene of the crime." *Kentucky v. James*, 586 S.W.3d 717, 725 (Ky. 2019). Another court held that the crucial inquiry is whether the "defendant's actions disguised the evidentiary value of the article." *Anderson v. State*, 123 P.3d 1110, 1118 (Alaska Ct. App. 2005). The Louisiana Supreme Court said that its tampering-with-physical-evidence statute is the broadest in the nation. Under that statute, a person is guilty if he "moves" evidence with the requisite intent and knowledge. *State v. Jones*, No. 2007-K-1052 (La. 6/3/08); 983 So. 2d 95, 102 ("[N]othing beyond 'movement' is required by the statute if accompanied by the requisite intent and knowledge."). Although our statute does not include a "moves" theory of liability, the State argues that we should interpret "alter" to

---

[7] *State v. Jones*, No. 2007-K-1052 (La. 6/3/08); 983 So. 2d 95, 102.

[8] DEL. CODE tit. 11, § 1269 ("the person suppresses [physical evidence] by any act of concealment, alteration or destruction").

[9] N.M. STAT. § 30-22-5; *see State v. Rudolfo*, 2006-NMSC-035, 144 N.M. 305, 311–12, 187 P.3d 170, 177 (holding evidence of tampering sufficient where the defendant hid the murder weapon in his car).

[10] ALASKA STAT. § 11.56.610(a)(1).

[11] 720 ILL. COMP. STAT. 5/31-4 ("disguises physical evidence"); GA. CODE § 16-10-94(a); MIAMI-DADE COUNTY, FLA., CODE OF ORDINANCES ch. art. IV, § 21-26(A)(3)(a); WIS. STAT. § 946.47(1)(b).

include anything that is "moved."

## DISCUSSION

### a. Alter

The word "alter" must be interpreted according to its common usage because it is not statutorily defined. The State argues that "alter" in its common usage means "to 'change in character or composition, typically in a comparatively small but significant way'"[12] and that the character of a thing is changed when it is moved, no matter how *de minimis* the movement. Under this theory, Stahmann would be guilty of tampering with the pill bottle the moment he touched it in his pocket with the intent to impair its availability as evidence.[13] We are not persuaded. If the legislature intended for the mere movement of a physical thing to constitute tampering, it could have said that. We think the more reasonable interpretation is that, when a defendant is alleged to have altered a physical thing, like the pill bottle in this case, in its common usage "alter" means that the defendant changed or modified the thing itself, not that he merely changed its geographic location.[14]

The cases cited by the State do not change our conclusion. The State argues that

---

[12]State's Brief on the Merits at 7 (citing OXFORD ENGLISH DICTIONARY, https://en.oxforddictionaries.com/definition/alter (last visited Nov. 8, 2018)).

[13]We do not discuss the court of appeals's decision when resolving this issue because the State raised this argument for the first time in a motion for rehearing at the court of appeals, which the court denied without written opinion.

[14]The State alleged that Stahmann altered a pill bottle, not that he altered a crime scene.

the court of appeals in *Carnley v. State*, 366 S.W.3d 830 (Tex. App.—Fort Worth 2012, pet. ref'd) held that "moving a car constituted altering the car" for purposes of the tampering statute. However, the court in that case explicitly said that it did not resolve the issue because the parties agreed that "[Carnley] altered the Pontiac by moving it." *Id.* at 834 n.6. The State also cites *Ramos v. State*, 351 S.W.3d 913 (Tex. App.—Amarillo 2011, pet. ref'd), *Martinez v. State*, No. 05-17-00817-CR, 2018 WL 2434409 (Tex. App.—Dallas May 30, 2018, pet. ref'd), and *Burks v. State*, PD-0992-15, 2016 WL 6519139 (Tex. Crim. App. Nov. 2, 2016) (not designated for publication), *overruled on reh'g* 2017 WL 3443982, all of which deal with corpses. In *Ramos*, the Amarillo Court of Appeals held, and later this Court in *Burks* held, that the evidence is sufficient to prove that a corpse was altered if the corpse was moved *and* its physical state changed.[15] *Burks*, 2016 WL 6519139, at *6; *Ramos*, 351 S.W.3d at 915. In *Martinez*, another unpublished case, that court of appeals misread *Ramos* and *Burks* and held that "evidence is 'altered' when its location *or* physical state is changed." *Martinez*, 2018 WL 2434409, at *3 (emphasis added). All three cases are distinguishable. This case does not deal with a corpse, which is quantitatively different than the prescription pill bottle at issue here, and this case does not deal with altering the location *and* physical state of the pill bottle, only

---

[15]In our original *Burks* decision, we relied on the *Ramos* Court's interpretation of "alter," which it adopted from dicta in *Rotenberry v. State*, 245 S.W.3d 583, 587 (Tex. App.—Fort Worth 2007, pet. ref'd). *Rotenberry* was about the concealment of physical evidence, not altering physical evidence.

its location.[16]

With this background, we conclude that the evidence is insufficient to prove that Stahmann altered the prescription pill bottle when he threw it over the fence because the mere act of throwing the pill bottle did not change the bottle itself. Having found the evidence of alteration insufficient, we next turn to whether the evidence of concealment was sufficient.

### b. Conceal

The State argues that "conceal" means to remove from sight or notice, even if only temporarily, and that the statute refers to concealing evidence from law enforcement. According to the State's argument, it does not matter that Ballard and Freeman never lost sight of the pill bottle, that they directed Koepp to the bottle, that Koepp could see it

---

[16]The State also cites two unpublished decisions from courts of appeals in Ohio and one published case from the Kentucky Supreme Court. *Kentucky v. Henderson*, 85 S.W.3d 618, 620 (Ky. 2002); *State v. Wilson*, 2012-Ohio-3098, 2012 WL 2628718, ¶¶ 41–43 (not designated for publication); *State v. Brodbeck*, 2008-Ohio-6961, 2008 WL 5423445, ¶¶ 50–52 (not designated for publication);.

We are not persuaded. In *Henderson*, the Kentucky Supreme Court construed the word "conceal," not "alter." *Henderson*, 85 S.W.3d at 619–20. In *Wilson*, although the court of appeals held that the evidence was sufficient to prove tampering where the defendant "'completely changed the crime scene,'" it did not specify which theory of tampering (i.e., altering, destroying, concealing, or removing) it relied on in holding the evidence sufficient. It merely held that the jury's conclusion to convict Wilson was not unreasonable or against the manifest weight of the evidence. *Wilson*, 2012 WL 2628718, ¶¶ 41. In *Brodbeck*, the court of appeals held that the evidence was sufficient to prove tampering with physical evidence when Brodbeck moved a corpse and repositioned a firearm near one of its hands to simulate a suicide. *Brodbeck*, 2008 WL 5423445, ¶¶ 50–52. But the court never specified what Brodbeck was alleged to have tampered with. *Id.* It suggested at one point that Brodbeck might have been charged with altering the crime scene. *Id.* However, that is not the issue here. The State's allegation is that Stahmann tampered with a prescription pill bottle, not the crime scene.

"very clearly," or that the bottle was easily retrieved, because Stahmann concealed it from Koepp when he threw it over the fence before Koepp arrived to investigate.

Even if we assume without deciding that the statute applies to only law enforcement, as the State argues, we conclude that the pill bottle in this case was not concealed from law enforcement. What the witnesses saw and told law enforcement informs whether the physical evidence was concealed from law enforcement.[17] The outcome of this case might be different had Ballard and Freeman not been there, had they lost sight of what Stahmann threw or where it landed, had they not spoken to Koepp and directed him to the pill bottle when he arrived, or had Koepp had a difficult time locating it. But those are not the facts of this case.[18]

The State argues that *Munsch v. State*, No. 02-12-00028-CR, 2014 WL 4105281 (Tex. App.—Fort Worth Aug. 21, 2014) (mem. op., not designated for publication) and *Lujan v. State*, No. 07-09-0036-CR, 2009 WL 2878092 (Tex. App.—Amarillo Sept. 9,

---

[17]The State argues that the court of appeals erroneously relied on *Thornton* and *Villarreal*, but we disagree. According to the State, unlike in this case, in those cases the police had first-hand knowledge of the "concealed" evidence because Thornton and Villarreal tried to conceal the evidence in plain view of police officers. But we never attributed our holding in *Thornton* to the fact that Thornton tried to conceal evidence specifically from the police. *Thornton* dealt with the reformation of convictions and whether the evidence was sufficient for a jury to rationally infer that Thornton "harbored the specific intent to conceal the crack pipe and thereby impair its later availability as evidence." *Thornton*, 425 S.W.3d at 303. Second, *Villarreal* was unpublished and dealt with a Wal-Mart employee who saw Villarreal throw a pill bottle under a vehicle, not law enforcement.

[18]The State presents us with three hypotheticals to illustrate why it thinks that our interpretation will lead to absurd results, but none of the hypotheticals reflect the facts of *this* case.

2009) require a different result, but we disagree. In *Munsch*, police found a bag containing 16.94 grams of methamphetamine after a traffic stop when the driver told police on the way to the county jail that Munsch threw a bag of methamphetamine out of the passenger-side window while they were being pulled over. *Munsch*, 2014 WL 4105281, at *3. After returning to the scene, the police officer located the bag with his flashlight, although he had difficulty doing so because it was dark outside. *Id.* at *8. In *Lujan*, as a police officer approached Lujan on foot to detain him for possible drug activity, he noticed that Lujan "took his right hand from his left side and moved it towards the center 'as if he was throwing something.'" *Lujan*, 2009 WL 2878092, at *1. The officer found a crack pipe on the ground. *Id.*

According to the State, this case and *Munsch* are similar because in both cases law enforcement would not have found the evidence without the assistance of a third-party witness. We think that *Munsch* is distinguishable. The evidence in that case established that it was not until the driver was arrested and secured in the police cruiser that she told the officer about the bag of drugs. In this case, however, Ballard and Freeman told Koepp about the bottle as soon as he arrived. Koepp had not even begun his on-scene investigation. Second, it was difficult for the officer in *Munsch* to find the bag even after the driver told him about it since it was dark and Munsch threw it out of the passenger-side window while the vehicle was still moving. But here, Ballard and Freeman showed Koepp exactly where the bottle was, and Koepp saw the bottle "very clearly" in the

afternoon daylight.

The State argues that *Lujan* shows that a defendant need not successfully conceal something to be guilty of tampering with evidence by concealment, but we agree with the court of appeals that "[a]ctual concealment requires a showing that the allegedly concealed item was hidden, removed from sight or notice, or kept from discovery or observation." *Stahmann*, 548 S.W.3d at 57. We also agree with the court of appeals that intent and concealment are two distinct elements of the offense and that the *Lujan* Court erred if it concluded otherwise. *Id.* While a rational jury could have reasonably inferred that Stahmann intended to conceal the pill bottle when he threw it over the wire fence, the evidence shows that he failed to conceal it as he intended because the bottle landed short of the bush in plain view on top of some grass.

The evidence is insufficient to prove that Stahmann concealed the pill bottle when he threw it over the fence.

## CONCLUSION

Because we did not grant review of the court of appeals's holding reforming Stahmann's conviction, we do not address that holding and affirm the judgment of the court of appeals.

Delivered: April 22, 2020

Publish